## GEORGE WILDER

*v.*

## AURORA, DEKALB AND ROCKFORD ELECTRIC TRACTION CO.

*Opinion filed June 23, 1905—Rehearing denied October 12, 1905.*

1. PLATS—*when a plat cannot be regarded as a statutory plat.* Under the Revised Statutes of 1845 a plat certified by a deputy surveyor in his own name instead of by the county surveyor, and certified to have been laid out by an agent of the owner instead of the owner, is not a statutory plat, and does not vest the fee of the streets and alleys shown on the plat in the municipality.

2. SAME—*effect of conveyance where plat does not comply with statute.* A conveyance of land abutting upon a street shown upon a plat, not sufficient to constitute a statutory dedication, carries with it the fee in the soil to the center of the street, even though the property is conveyed by lot and block number only, unless the fee in the street is expressly excluded from the grant.

3. DEEDS—*what sufficient description of county and State where property is located.* A deed describing the grantee's residence as "West Aurora, in the county of Kane and State of Illinois," and then conveys certain described land in "Gale's addition to West Aurora," sufficiently shows the county and State in which the property conveyed is located.

4. SAME—*when alterations are sufficiently explained.* Alterations in a deed executed to correct certain defects in a former quitclaim deed, which consist of the erasure of certain words in the warranty deed form used in drawing the second deed, in order to make it conform to the original quit-claim deed, are sufficiently explained by introducing the deeds in evidence and comparing them.

5. APPEALS AND ERRORS—*when freehold is involved.* A freehold is involved under the issues made by a bill alleging complainant's ownership of the fee in a certain lot and that such ownership extended to the center of the street in front of the lot, which allegation is denied by the answer and an averment made that ownership of the fee in the street was in the city.

6. SAME—*when Supreme Court has jurisdiction.* The Supreme Court has jurisdiction of a direct appeal from a decree on a bill for injunction alleging complainant's ownership of the fee in the street, and an attempt by the defendant to impose an additional servitude thereon by constructing a commercial railroad without condemning

the fee or otherwise making just compensation to complainant for the taking of his property.

7. MUNICIPAL CORPORATIONS—*an ordinance granting railroad rights to individuals is void.* An ordinance granting to individuals the right to construct and operate a street railroad or commercial railroad upon a public street is absolutely void, since paragraph 90 of section 63 of article 5 of the City and Village act authorizes cities to confer such powers on corporations only.

8. SAME—*when ordinance not void because passed as an amendment to void ordinance.* An ordinance which is complete in itself, granting to a corporation the right to construct and operate a railroad, is not void because it was passed as an amendment to a void ordinance granting same rights and privileges to certain individuals.

9. SAME—*assignment of rights conferred by void ordinance is without force.* Where an ordinance granting the right to construct and operate a railroad is void because the grant was to certain individuals, there can be no valid assignment of the rights and privileges attempted to be granted.

10. SAME—*what amounts to a delegation of legislative power.* An ordinance granting to certain individuals and their "assigns" the right to construct and operate a railroad upon a public street is not rendered valid by the assignment of the privileges conferred to a corporation, since such course amounts to a delegation of legislative power by the city council to individuals.

11. SAME—*life of petition is limited to passage of one ordinance.* The life of a property owners' petition, where one is required as authority for the passage of an ordinance, is limited to the passage of the particular ordinance and cannot be used as the basis of a second ordinance.

12. STREET RAILWAYS—*property owner cannot enjoin construction of street railroad.* A street railroad is not regarded as an additional servitude, and an abutting owner, even though he owns the fee to center of the street, is not entitled to enjoin its construction.

13. SAME—*railroad authorized to carry milk is not a street railroad.* A railroad authorized, by the ordinance granting its rights, to carry milk, as well as passengers, baggage, mail and express, is a commercial railroad and constitutes an additional servitude upon a street, which entitles an owner of the fee to the center of the street to enjoin the construction of the road until he is compensated for the taking of his property in the street.

APPEAL from the Circuit Court of Kane county; the Hon. CHARLES A. BISHOP, Judge, presiding.

The original bill in this case was filed on October 11, 1904, by the appellant, George Wilder and two others, to-wit, C. H. Hitchcock and E. W. Dunton, alleging that they were residents of Aurora in Kane county, and owners of real and personal property in said city, and tax-payers, and that said Wilder was the owner in fee of lot 9 in block 19, in Stephen E. Gale's addition to West Aurora; that Hitchcock was the owner in fee of lot 3 in block 18 in said addition, and that E. W. Dunton was the owner in fee of lot 7 in block 20 in said addition; and that their respective fees began in the center of Walnut street in said city, and that they respectively owned the fee of Walnut street in front of their premises, subject only to the use of the same by the public as a public highway, and had valuable improvements on their respective premises. The original bill was filed against V. A. Watkins, William George, R. S. Vivian, William P. Kopf, C. W. Ross, and the Aurora, DeKalb and Rockford Electric Traction Company.

The bill alleges that on May 27, 1902, the city council of Aurora, without authority in law and contrary to the statute, granted a license to the said Watkins, George, Vivian and Kopf, their heirs, executors, administrators and assigns, to construct a railroad in said Walnut street in Aurora, which would necessarily pass over the portions of their respective premises, owned in fee by the complainants, falling within Walnut street; that the said license was approved May 29, 1902, by the mayor of Aurora, copy of said ordinance being attached to the bill; that on November 2, 1903, said city council attempted to amend said void license or ordinance, extending the time, within which the grantees therein were to perform the acts therein mentioned twelve additional months, copy of said amendatory ordinance being attached to the bill; that the electric traction company above named is organized under the general railway laws of Illinois with such powers as are authorized by the statutes of Illinois, a

copy of its articles of incorporation being attached to the original bill; that no compensation has ever been paid to complainants or either of them for the use of the fees owned by them respectively in said street; that they have not, or either of them, consented to the occupation or use of their fees in Walnut street for the purpose of said railroad; that said railroad has not attempted to condemn, or purchase from them, the privilege of taking from them their rights in said fees; that said pretended license or franchise was granted without authority of law; that the city did not have the power, under the statutes or constitution of the State, to grant said license as attempted in said ordinance and the amendment thereto; and that said Watkins, Vivian, George and Kopf were not thereby vested under the statutes and constitution of the State with the power to receive authority from the city of Aurora to exercise the right of eminent domain, and construct a railroad in the public highway; that said license is void, and no rights were acquired by the grantees therein under the same; that said proposed railway, as set out in said ordinance, is intended to be a part of a railroad system, extending from the intersection of North River and Walnut streets in Aurora the entire length of Walnut street to the westerly limits of the city, and there connecting with the tracks of the Aurora, DeKalb and Rockford Electric Traction Company, and forming a continuous railroad to the city of Rockford by way of the city of DeKalb; that said grantees propose to lease or sell, assign and transfer their rights in said franchises to said electric traction company, and that said electric traction company will operate said railway for its entire length; that said traction company is licensed and permitted by said ordinance to carry express and milk, and that it is proposed to conduct a large business by carrying merchandise to and from Rockford and Aurora, and the cities lying between them along said line, whereby it is proposed to subject the fees of complainants to an additional servitude, not authorized by law, and without due compensation to them for the confiscation of

their property for said purpose; that complainants attach to their bill, and make a part thereof, a true copy of the plat of said Stephen F. Gale's addition, and of the certificate of acknowledgment of said plat; that said individuals and traction company threaten to enter upon Walnut street, and make excavations and tear up the surface thereof with a view to constructing thereon and maintaining railroad tracks, and operating a railroad, and in so doing will not only discommode public travel, but will interfere with the right of ingress and egress of complainants to and from their respective premises, to their irreparable injury. The bill prays that said Watkins, George, Vivian, Kopf, Ross and said electric traction company may be required to answer the bill, and that it may be decreed that the said license or franchise is void and a nullity, and that the said defendants and their assigns obtained no rights under it, and that they may be enjoined from exercising any of the pretended rights granted thereby, and from going upon Walnut street for the purpose of excavating or tearing up the same, or building or constructing said railroad, and from going upon the respective fees of the said complainants upon said street for said purpose, etc.

The defendant, Ross, filed a disclaimer. The defendants Watkins, George, Vivian and Kopf filed a joint and several answer on November 23, 1904. On the same day the separate answer of the Aurora, DeKalb and Rockford Electric Traction Company was filed to the original bill. Replications were filed to the answers.

On November 27, 1904, the cause came on for hearing upon bill and answers, and evidence was offered by complainants to show that they were owners of lots abutting on Walnut street, and that these lots extended to the center line of the street. Oral evidence was also introduced by the defendants, tending to show the character of their road and railway, and the character of the business proposed to be transacted by the latter.

216—32

On December 6, 1904, the bill was dismissed by the complainants as to C. H. Hitchcock and E. W. Dunton, and on the same day the bill was dismissed as to the defendants Watkins, George, Vivian, Kopf and Ross, leaving the Aurora, DeKalb and Rockford Electric Traction Company the only party defendant. On the same day leave was given to the complainant Wilder, being the only complainant left, to file a supplemental and amended bill, which supplemental bill was filed on December 17, 1904, and on December 19, 1904, a demurrer was filed to the amended and supplemental bill.

On December 22, 1904, the court rendered a final decree wherein, after reciting that the cause came on to be heard upon said original bill and the answers thereto, and upon the amended and supplemental bill and the demurrer of the traction company thereto, and upon proofs oral and documentary heard in open court upon said original bill and the answers thereto, and after reciting that the court found the equities of the cause to be with the defendant and against the complainant, it was decreed that the demurrer to the amended and supplemental bill be sustained, and that the original and amended and supplemental bills be dismissed for want of equity. To the ruling of the court in sustaining the demurrer, and in dismissing the original and amended and supplemental bills, the complainant excepted, and took an appeal to this court. The present appeal is prosecuted for the purpose of reviewing the decree of dismissal, so entered on December 22, 1904.

By the terms of the original ordinance passed by the city council of Aurora on May 27, 1902, and approved May 29, 1902, authority was given, by the first section thereof, to said Watkins, George, Vivian and Kopf, "their heirs, executors, administrators and assigns," to lay down, maintain and operate a railway with the necessary curves, side-tracks, turn-outs, cross-overs, switches and Y's, in and upon certain streets in Aurora, to-wit, North River street and Walnut street. By section 1 it was provided that no tracks other

than the single track of "said grantee" should be permitted upon Walnut street, except that one side-track or switch, not to exceed two hundred feet in length, might be located on Walnut street at some point between Lake street and May street. By said section 1 a double track railway was to be constructed upon North River street extending southerly between the north line of Walnut street to Galena street, and a single track railway upon Walnut street extending from the east line of North River street to the westerly limits of the city, together with the right to connect the tracks thereby authorized at such points as might be deemed necessary by said Watkins, George, Vivian and Kopf, their heirs, executors, administrators, assigns or lessees, and the further right to connect said tracks with the tracks of any railway company, operating tracks in Aurora, but only for the purpose of forming the loop therein referred to, the tracks to be laid and in operation within thirty months after the passage of the ordinance, with the exception of such time as the work might be delayed by injunction or the action of the council; the rights thereby granted only to be forfeited as to the unbuilt portion of the tracks in case of non-completion within the time specified. Said grantees and their assigns were granted the right to permit any railway company, subject to the approval of the city council, to use their tracks on North River street from Walnut street to Galena street for the purpose of such loop, as should be at any time operated through the business portions of the east and west sides of the city.

Section 2 of the ordinance provided that the grant therein should extend for the term of forty years from the passage of the ordinance, provided the same should be accepted by said parties within ten days after the passage thereof, and provided further that the local rate of fare which the grantees or their assigns might charge for a continuous ride over its tracks in Aurora should be re-adjusted in the following manner: For the first twenty years the local rate of fare should not be more than five cents. For the following twenty

years the local rate of fare should be determined by ascertaining the lowest rate of fare demanded by street railways, prevailing in ten different cities having approximately the same population as Aurora, etc. Section 3 of the ordinance provided that said grantees, their legal representatives or assigns, should use, in the construction of the tracks, improved girder rails on North River street, and T rails, (not less than seventy pounds per yard and subject to the approval of the city council), on Walnut street, which should be so laid that vehicles may freely and safely cross the same.

Section 4 of the ordinance provided that, during November, December, January, February and March of each year, heating apparatus of a certain kind should be provided, and that the cars upon said tracks should be run at such intervals as might be necessary to accommodate the public provided that said cars should be run at intervals of not more than one hour apart between five o'clock A. M. and nine o'clock P. M., and that said cars should be run at a speed not to exceed five miles an hour on curves, and ten miles an hour on the balance of the local line of said railway, subject to the police regulations of the city; that, in removing snow from the tracks, said grantees, their legal representatives or assigns, should distribute it so that it would not impede public travel on the streets occupied by their tracks; that, when the city council should so order, they should, within ninety days after notice by the city clerk, place fenders on their cars.

Section 5 provided that said grantees or assigns should have the right to operate their cars by electricity, compressed air, cable or other motive power except steam, and to construct, lay down and erect wires, iron poles, underground conduits, and other apparatus, necessary for the operation and maintenance of its lines, and to change from one motive power to another as it might elect; that, in case of the use of electric power, they should have the right to string necessary wires, including an overhead contact system, consisting of wires suspended from painted iron poles on River street and

Walnut street from River street to the Geneva branch of the
Chicago, Burlington and Quincy railroad tracks, and painted
cedar poles from thence to the westerly city limits, set within
the curb line of the street on either side thereof, but that said
grantees in locating their poles should not obstruct driveways
nor interfere with catch-basins, drains, sewers, gas or water
pipes, the wires to be not less than nineteen feet above the
rails, and the grantees or assigns to have the right to make
all necessary connections of said wires with power house, car
shed, or other property of grantees.  By section 5 it was also
provided that, in the event of any new and better method of
furnishing electricity or other motive power for the opera-
tion of railways being discovered, the grantees or assigns
should have the right to adopt the same in place of or in
connection with the overhead trolley system.  Said section 5
also provides as follows: "The said tracks and railways shall
be used for no other purpose than to transport passengers
and their ordinary baggage, United States mail, express,
milk, and the cars and carriages for that purpose shall be of
the style and class ordinarily used on such railways in other
cities.  No freight shall be carried by said grantees, their
legal representatives or assigns, excepting such as is used in
the construction of their road within the limits of the city of
Aurora."

Section 6 provides that the grantees or assigns shall
keep the space between the rails of its tracks, and two feet
on the outside of each rail, on streets occupied by them in
good condition and repair, etc.  Section 7 provides the gran-
tees or assigns "shall have the right to do such excavating
and grading as they may deem necessary for the proper lay-
ing of their tracks, also the right to lay drainage tile or pipe
and construct catch-basins and connect said tile or pipe and
catch-basins with the sewer system of the city of Aurora,
but said work shall be completed within six months from
the time it is commenced."  Section 7 also provides that the
streets shall be left in as good condition as before the build-

ing of the road, etc. Section 8 provides that the grantees or assigns shall save the city harmless against all damages, etc., by reason of the granting of such privileges, or resulting from the exercise of the same, and shall within ten days from the passage of the ordinance execute a bond to the city in the sum of $10,000.00 to indemnify the city against such damages, etc. Section 9 provides that the terms and conditions of the ordinance shall inure to the benefit of the grantees, their legal representatives or assigns, and the city of Aurora, its successor or successors. Section 10 provides that the permission and authority therein granted are to be used "for the public purpose of a general railway, connected with the tracks when laid of the Aurora, DeKalb and Rockford Electric Traction Company, a corporation organized and existing under the general railway laws of the State of Illinois, their successors, assigns, or lessees, and now projecting a railway from the city of Aurora to the city of Rockford, in said State. The rights and privileges herein granted shall cease and determine and this ordinance and the grants herein contained shall be null and void, unless the grantee herein shall construct and operate its railway from the city of Aurora, Illinois, to the city of DeKalb, Illinois, within thirty months, and unless the said grantee herein shall expend within eighteen months from the passage of this ordinance, upon the purchase of right of way and construction of its railway, the sum of at least $20,000.00, outside of the city of Aurora, Illinois."

Section 11 provides that in consideration of the privileges granted, etc., said Watkins, George, Vivian and Kopf, their heirs, executors, administrators and assigns, shall, in their written acceptance of the ordinance, bind themselves, their heirs, etc., to pay or cause to be paid to the city of Aurora the sum of $10,000.00 on or before December 15, 1902, said sum to be paid to the city treasurer on or before December 15, 1902. Section 12 provides that the ordinance shall take effect if the grantees, their legal representatives or

assigns, shall file the bond required, and accept in writing the terms and conditions of the ordinance, etc.

On November 2, 1903, there was passed, and on November 5, 1903, approved, an amendatory ordinance providing that the times, within which, under the rights, privileges and franchises given to said four individuals on May 27, 1902, they had to construct and operate their railway from Aurora to DeKalb, and within which to expend for the purchase of right of way and construction, the sum of at least $20,000.00, and within which to have their road constructed and in operation along said streets, should be extended twelve additional months. Section 2 of the amendatory act provided that the ordinance should be in full force and effect ten days after its legal publication, and upon the acceptance of the same in writing within thirty days from the passage thereof by the grantees, their legal representatives, or assigns.

It is conceded that no tracks had been actually laid on Walnut street, the street upon which the appellant's lot abuts, at the time of the filing of the original bill in this cause.

On November 7, 1904, the city council of Aurora passed another ordinance, which was approved on the same day, which is substantially the same as the ordinance, attacked as void, in the original bill passed on May 27, 1902, and amended on November 2, 1903, except that the authority to construct the railroad in question was, by the ordinance of November 7, 1904, conferred upon the Aurora, DeKalb and Rockford Electric Traction Company, its successors and assigns, instead of being conferred upon Watkins, George, Vivian and Kopf, the individuals named in the ordinance of May 27, 1902, and except that the grant by the ordinance of November 7, 1904, was to extend, by the terms of section 2 thereof, for the term of thirty-eight years from the passage thereof, instead of the term of forty years as specified in section 2 of the original ordinance; and except that the said traction company was to construct and operate its railway from Aurora to DeKalb on or before November 27, 1905,

and to expend, on or before November 27, 1904, upon the purchase of right of way and construction, the sum of at least $20,000.00 outside of the city of Aurora. There may be other slight differences between the two ordinances, but those already indicated are the material ones.

The ordinance of May 27, 1902, was made an exhibit to the original bill, and also to the amended and supplemental bill, and the ordinance of November 7, 1904, was made an exhibit to the amended and supplemental bill. There was also made an exhibit to the amended and supplemental bill the petition to the mayor and aldermen of the city of Aurora, and the names of the property owners signed to the same, and the amounts of feet frontage for which they signed, which was not signed by the complainants in the original bill, or the sole complainant in the amended and supplemental bill, being the appellant here. By the terms of this petition the owners, signing the same, owning land abutting and having a frontage on Walnut street lying between the east line of North River street and the westerly limits of Aurora, petitioned the common council of Aurora to grant to Watkins and George of Aurora and Vivian and Kopf of Chicago, their representatives and assigns, the right to use said portion of Walnut street, or as much thereof as the mayor and aldermen may deem best for the purpose of constructing, maintaining and operating thereon a railroad with electricity or other motive power "which will not scatter smoke or fire, with single track with the necessary sidetracks and switches and with all necessary poles, (said poles to be set within the curb line of said street), wires, and other appliances for the operation of the said railroad, and we hereby consent to the construction and operation of the said railroad on, over, through and along said portion of said street or any part or portion thereof, by the said V. A. Watkins, William George, R. S. Vivian and William P. Kopf, their representatives and assigns."

There was also made an exhibit to the amended and sup-
plemental bill an assignment, dated September 26, 1904, by
Watkins, George, Vivian and Kopf of said franchise to the
Aurora, DeKalb and Rockford Electric Traction Company,
and an acceptance in writing of the assignment by the said
traction company on the same day, by the terms of which
assignment Watkins, George, Vivian and Kopf, for the con-
sideration of the sum of one dollar to them in hand paid by
said electric traction company, sold, assigned, conveyed, set
over and transferred to said traction company, its successors
and assigns, "all the title, interest, privileges and immuni-
ties granted to us, either jointly or severally, by a certain
franchise hereinafter described, it being the purpose of this
instrument to convey and assign to said traction company
all rights by us owned or claimed, either jointly or severally,
in and to said franchise, or permit, to-wit: That certain
franchise heretofore granted to the undersigned, their heirs,
executors, administrators and assigns, by the city council of
the city of Aurora, Kane county, Illinois, known and entitled,
'Ordinance granting to V. A. Watkins, William George,
R. S. Vivian and William P. Kopf, their heirs, executors,
administrators or assigns, consent and right to use, locate,
lay down, construct, maintain and operate a railway in cer-
tain streets and avenues in the city of Aurora, Illinois,' which
said ordinance was passed May 27, 1902, approved May 29,
1902, and also the amendment to said franchise, passed No-
vember 2, 1903, and approved November 5, 1903."

There was also attached to said amended and supple-
mental bill, as an exhibit, the articles of incorporation of the
Aurora, DeKalb and Rockford Electric Traction Company
in which are set forth, first, the name of the corporation;
second, the places from and to which it is intended to con-
struct the said railroad, as follows:  In and from the city of
Aurora in Kane county; thence in a north-westerly direc-
tion through the counties of Kane, DeKalb, Ogle and Win-
nebago, to and terminating in the city of Rockford in

the county of Winnebago, all in the State of Illinois with branches or auxiliary lines of road necessary or convenient to the operation of said railroad; third, that the principal business office of the corporation should be established and maintained at Aurora; fourth, that the time of the commencement of the said proposed corporation was from the date of the filing said articles for record, as required by law, and to continue for a period of fifty years thereafter; fifth, the amount of capital stock of the corporation was fixed at $100,000.00; sixth, the names and places of residence of several persons forming the corporation, (then follow the names of five persons all residing in Chicago, Illinois); seventh, the names of the first board of directors, which are the same as those last above referred to; eighth, a provision that the government of the corporation shall be vested in a board of directors and the officers as provided by the by-laws; and, ninth, that the capital stock shall be divided into one thousand shares of the par value of $100.00 a share.

There was also attached, as an exhibit to the amended and supplemental bill, a written acceptance by the Aurora, DeKalb and Rockford Electric Traction Company of the ordinance passed on November 7, 1904. There was also attached as an exhibit to said amended and supplemental bill a receipt dated December 15, 1902, executed by the city of Aurora through its city treasurer and approved by the mayor and attested by the city clerk, for the sum of $10,000.00 from said electric traction company in satisfaction of the liability to the city against Watkins, George, Vivian and Kopf, and their assigns, under section 11 of said ordinance of May 27, 1902.

CARNES, DUNTON & FAISSLER, and CHENEY & EVANS, for appellant:

Under the statutes of 1845 the county surveyor's certificate is a requisite part of the plat. The plat is entitled to neither acknowledgment nor record until it has been first cer-

tified by the county surveyor. His certificate must also be recorded and form a part of the record. *Auburn* v. *Goodwin,* 128 Ill. 57.

The certificate of a deputy county surveyor, acting in his own name and not in that of his principal, does not bind the principal or make his act that of the county surveyor. *Auburn* v. *Goodwin,* 128 Ill. 57.

A plat executed and acknowledged by an agent or attorney in fact does not constitute a statutory dedication of the streets. *Thompson* v. *Maloney,* 199 Ill. 276.

A conveyance of property abutting upon a street shown upon a plat, which plat is not sufficient to constitute a statutory dedication, carries with it the fee of the soil to the center of the street, although the property is conveyed by lot or block number only. *Brewster* v. *Cahill,* 199 Ill. 309.

The ordinance giving the right to construct and operate a railroad to the four natural persons was absolutely void. *Goddard* v. *Railway Co.* 202 Ill. 364; id. 452.

The authority to make a grant by a city to a railroad company cannot be delegated by the council to any officer of the city or to the board of public works. It must be granted by the city council. *State* v. *Bell,* 34 Ohio St. 194.

The railroad here in question is not a street railway, and is not entitled to the benefit of statutes and decisions that are expressly limited to the use of streets by street railways. It is not a street railway because it is to be used for purposes other than transporting passengers. Elliott on Roads and Streets, (2d ed.) sec. 732.

The distinctive and essential feature of a street railway, considered in relation to other railroads, is that it is a railway for the transportation of passengers, and not of freight. Elliott on Roads and Streets, (2d ed.) sec. 733.

A railway authorized to carry freight as well as passengers becomes a commercial railroad instead of a street railroad, and such a railroad, when laid in the street, becomes an additional burden on the fee, and cannot be laid without

the consent of or compensation made to the adjoining owners. *Linden Land Co.* v. *Railway Co.* 107 Wis. 493.

While an electric street railway in a street is not an additional burden on the fee, yet an electric street railway operating passenger cars from one city through streets of another city is an additional burden on lands of abutting owners. *Younkin* v. *Traction Co.* 98 N. W. Rep. 215.

KNIGHT & BROWN, THEODORE WORCESTER, and GEORGE G. KING, for appellee:

When the fee of the street is in the city, such damages as the abutting owner may suffer from the laying of a railroad track in the street are merely consequential, so far, at least, as they affect the property abutting on the street. In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking. *Railroad Co.* v. *Railroad Co.* 156 Ill. 255; *Stetson* v. *Railroad Co.* 75 id. 74; *Doane* v. *Railroad Co.* 165 id. 510; *Bond* v. *Pennsylvania Co.* 171 id. 508; *Truesdale* v. *Grape Sugar Co.* 101 id. 561.

Title is not proved by a deed of premises which are incapable of certain location. *Carter* v. *Barnes,* 26 Ill. 455; *Shackleford* v. *Bailey,* 35 id. 387; *Hanna* v. *Palmer,* 194 id. 41.

The right to construct and operate a street railroad may be granted to an individual as well as to a corporation. *Henderson* v. *Railway Co.* 7 Utah, 199.

A partnership as well as a corporation may own and operate a street railway. *O'Neil* v. *Lamb,* 53 Iowa, 725.

A joint stock association or a co-partnership is capable of contracting for and acquiring and holding a grant, by ordinance, of a right to lay street railways in the streets of a city. *Nash* v. *Lowry,* 37 Minn. 261.

A franchise to construct a street railway may be granted to natural persons by the legislature. *In re Kerr,* 42 Barb. 119; *Chicago Dock Co.* v. *Garrity,* 115 Ill. 155.

The remedy for an unlawful use of a public street is by information in chancery by the Attorney General or by bill in chancery by the city. *Doane* v. *Railroad Co.* 165 Ill. 510; *Railway Co.* v. *Quincy,* 136 id. 489; *Attorney General* v. *Railroad Co.* 112 id. 520; *People* v. *Railroad Co.* 54 Ill. App. 348; Wood on Nuisances, (3d ed.) p. 109; *Springer* v. *Walters,* 139 Ill. 419; *Chicago* v. *Wright,* 69 id. 318.

In the absence of fraud a municipal council is the sole and final judge of the sufficiency of a petition for grant of rights in a public street. *Railroad Co.* v. *Cheetham,* 58 Ill. App. 318; *Tibbetts* v. *Railway Co.* 54 id. 180.

Frontage consents are assignable. *Railway Co.* v. *Railway Co.* 163 N. Y. 229; *Adee* v. *Railway Co.* 65 Hun, 529; *Sanfleet* v. *Toledo,* 10 Ohio Cir. Ct. 460.

An interurban electric street railway which is licensed to transport light express and mail matter is not an additional servitude upon the street. *Mordhurst* v. *Traction Co.* 71 N. E. Rep. 642.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

"Where the fee of the street is in the city, such damages, as the abutting owner may suffer from the laying of a railroad track in the street, are merely consequential, so far at least as they affect the property abutting on the street. In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking, the remedy being an action at law for damages." (*Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74; *Parker* v. *Catholic Bishop,* 146 id. 158; *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co.* 156 id. 255; *Doane* v. *Lake Street Elevated Railroad Co.* 165 id. 510). The present proceeding is instituted by the appellant, a property owner owning a lot abutting upon Walnut street in the city of Aurora, for the purpose of enjoining the appellee, the Aurora, DeKalb and Rockford Electric Traction Company,

from laying down its railway tracks upon Walnut street in front of appellant's property. The appellant claims, that he is the owner in fee of Walnut street in front of his lot to the center of the street, subject to a right of easement over the same in the city and the public. If this is not true, and if the fee of such portion of Walnut street is in the city, and not in appellant, as above stated, then, of course, the present bill for injunction will not lie.

*First*—The first question, therefore, to be determined, and which is discussed by counsel, is whether or not the appellant is the owner of the fee of the street in front of his lot to the center thereof. The traction company, the appellee herein, contends that the appellant has not shown himself to be the owner of the fee to the center of the street. Appellant's property is lot 9 in block 19 in Stephen F. Gale's addition to West Aurora. The plat of the addition was introduced in evidence, and is referred to as an exhibit to the amended and supplemental bill. The certificate, attached to the plat, is dated April 29, 1851, and is made by "John L. Hanchett, deputy surveyor," who certifies that he has surveyed and laid out into blocks, streets, alleys and lots, the following piece or parcel of land, to-wit: "A part of the north-east quarter of section 21, and north-west quarter of section 22, township 38, north, range 8 east, third principal meridian." The act of 1845, providing for the acknowledgment of plats, was in force when the plat here in controversy was acknowledged, and that act remained in force until the revision of the statutes of 1874. (*Gould* v. *Howe,* 131 Ill. 490). Section 17 of chapter 25 of the revision of 1845 of the statutes of Illinois provides that, whenever any person wishes to lay out a town in this State, or an addition or subdivision of out-lots, he shall cause the same to be surveyed, and a plat or map thereof made by the county surveyor, etc. (Statutes of Ill. of 1845, p. 115). Under the Revised Statutes of 1845 the county surveyor's certificate to the plat of an addition to a town is a requisite part of such plat when it is acknowl-

edged by the proprietor. "The plat is neither entitled to acknowledgment or record until it has first been certified by the surveyor. His certificate must also be recorded, and form a part of the record. Then, and not until then, does it become evidence of title. * * * The plat or map operates as a conveyance in fee of streets and alleys to the corporation only by force of the statute, and when it requires that it shall be 'made out, certified, acknowledged and recorded, as required by this division,' to have the effect of a conveyance, it is not within the province of a court to say it shall become a muniment of title notwithstanding a plain requirement has been ignored." (*Village of Auburn* v. *Goodwin,* 128 Ill. 57). A deputy county surveyor, acting in his own name, and not that of his principal in making a survey and plat of a town addition under the statute of 1845, does not bind the principal, or make his act that of the county surveyor. (*Village of Auburn* v. *Goodwin, supra*). It also appears that the other certificate, endorsed upon the plat or map of the addition, certifying that such map or plat, was laid out and subdivided, was not made by the owner, Stephen F. Gale, but was made by one P. A. Hall, agent for Stephen F. Gale. In *Thompson* v. *Maloney,* 199 Ill. 276, we held that a plat, executed and acknowledged by an attorney in fact, does not constitute a statutory dedication of the streets to the municipality. Inasmuch, therefore, as the plat of Gale's addition to West Aurora was certified by a deputy county surveyor, and not by the county surveyor, and inasmuch as the map or plat was not certified to have been laid out by the owner, but merely by an agent of the owner, the plat was not executed in accordance with the provisions of the statute, and cannot be considered a statutory plat. Consequently the fee of the street did not vest in the city of Aurora. The title thereto remained in the owner, Gale, so long as none of the lots were sold, but inasmuch as he sold lots by reference to the plat, title to the soil in front of said lots to the center of the street attached to the lots conveyed.

It follows, therefore, that the dedication of the streets, comprised in the subdivision or addition under consideration, one of which streets was Walnut street, was a mere common law dedication, and not a statutory dedication. If, then, the appellant has connected his title to the lot claimed by him with the title of the original dedicator of this addition, he owns the fee to Walnut street in front of his lot as far as the center of the street. "A conveyance of property abutting upon a street, shown upon a plat not sufficient to constitute a statutory dedication, carries with it the fee of the soil to the center of the street, although the property is conveyed by lot or block number only, unless the title to the street is expressly reserved to the grantor or excluded from the grant." (*Brewster* v. *Cahill,* 199 Ill. 309).

We do not understand, however, that counsel for appellee seriously contend that there was anything more here than a common law dedication only of the land embraced within the street, or that the title in fee of the abutting lot owners does not extend to the center of the street, but their claim is that the appellant has not properly connected himself with the title of the original dedicator, or maker of the subdivision or addition. The record shows that, by warranty deed dated June 25, 1887, James C. Hanna, and his wife, of Aurora, in consideration of $2750.00, conveyed and warranted to George Wilder of the same place, the present appellant, lot 9 in block 19, Gale's addition to West Aurora, Kane county, Illinois, as per plat of the same on record in the recorder's office of Kane county. The proof further shows that the appellant resided upon the lot in question as his homestead for seventeen years, and paid all taxes for fifteen years from 1888 to 1903 inclusive, upon said lot, such possession and payment of taxes being under the deed of June 25, 1887. Such possession and payment of taxes for more than seven years under the last named deed, as color of title, make him the owner of said lot 9 under the Limitation law in regard to possession and payment of taxes. Whether,

however, such title could extend his ownership to the center of the street, it is unnecessary to inquire, and we do not decide. The abstracts of title and deeds, introduced in evidence, show a connected chain of title from the government down to Hanna, the immediate grantor of appellant. No objection is made by counsel for appellee, as we understand their argument, to any part of this chain of title, except one deed, to-wit, a warranty deed, dated January 26, 1853, executed by Stephen F. Gale, the owner of the property when the subdivision was made, to Philip A. Hall. The description contained in this deed is as follows: "All the following described piece or parcel of land lying and being in sections No. 21 and 22 in township No. 38 north of range No. 8 east of the third principal meridian, and known as Gale's addition to West Aurora, reserving and excepting lot No. 8 in block No. 10 and lot No. 12 in block No. 13."

The first objection made to the last above named deed is, that the description does not state in what State or county the premises conveyed lie. The deed begins as follows: "This indenture, made this 26th day of January, A. D. 1853, between Stephen F. Gale of the city of Chicago, county of Cook and State of Illinois, of the first part, and Philip A. Hall of West Aurora in the county of Kane and State of Illinois of the second part." In thus describing the residence of the grantee, Philip A. Hall, the deed describes him as being "of West Aurora in the county of Kane and State of Illinois." When, therefore, in the description of the property mention is made of "Gale's addition to West Aurora," a reference back to the previous part of the deed shows that West Aurora is in Kane county, Illinois. This is sufficient to indicate the county and State, in which the premises lay. It was so held in *Guyer* v. *Warren,* 175 Ill. 328, and cases there cited. (See also *Garden City Sand Co.* v. *Miller,* 157 Ill. 225; also *Billings* v. *Kankakee Coal Co.* 67 id. 489). It is not a correct statement that no evidence was offered, tending to show that the parcel of land claimed to be owned

216–33

by the appellant was identical with any part of the premises described in the original deed. The deed from Gale to Hall conveys the whole of the addition to West Aurora, except lot 8 in block 10 and lot 12 in block 13. It, therefore, conveyed lot 9 in block 19 in said addition. The record of the plat was an exhibit to the amended and supplemental bill, and the original plat itself was produced, and appellant testified that he owned and lived and paid taxes on that particular lot of land. This was sufficient evidence to show that the premises, conveyed by the deed, were the same premises as those included in the recorded plat of Gale's addition to West Aurora.

It is also insisted by the appellee that there were certain erasures in the deed from Gale to Hall, and that, although the admission of the deed was objected to upon this ground, the erasures appearing on the face of the deed were not explained. Two deeds were introduced in evidence, shown upon the abstract of title, and also introduced as separate instruments outside of the abstract of title. The first deed introduced was a quit-claim deed, executed by Gale to Hall, dated January 26, 1853, signed by Gale, and sealed and delivered by him in the presence of one John T. Waite. This deed was recorded on January 29, 1853. On account of certain defects in the first deed it was re-drawn and re-executed by being signed and acknowledged by Gale before a notary public on September 4, 1863, and recorded on September 3, 1864. The erasures objected to are in the second deed, acknowledged in 1863, and were merely erasures of such words as made the deed correspond with the original quit-claim deed. The form used in drawing the second deed was the form of a warranty deed, and such words, as operated to make it a warranty deed, were erased so as to make it conform with the original deed, which was a quit-claim deed. The comparison of the two deeds was an explanation of the erasures, so as to relieve the deed of the charge that it contained such erasures or interlineations, as amounted to

suspicious circumstances.   (*Landt* v. *McCullough,* 206 Ill.
214; *Catlin Coal Co.* v. *Lloyd,* 180 id. 398; *Merritt* v. *Boyden & Son,* 191 id. 136).

The deed from Gale to Hall passed the title to the property in question, and was therefore properly admitted by the court.  For the reasons above stated, we are of the opinion that the appellant showed himself to be the owner in fee of said lot 9, and of the fee of so much of Walnut street, lying in front thereof, as extends to the center of the street. In other words, he has shown himself to be the owner in fee of so much of the half of Walnut street as lies in front of his lot.

*Second*—A motion was heretofore made by the appellee to dismiss the present appeal for want of jurisdiction in this court, and this motion was by a previous order entered herein reserved to the hearing of the cause, and will now be disposed of.  The original bill averred that George Wilder, the appellant, was the owner in fee of said lot 9, and that such ownership extended to the center of Walnut street in front of said premises, subject only to the use of the public as a public highway.  The defendants in their answers denied that the complainants in the original bill, or any of them, were the owners of the fee of that part of Walnut street described in the bill, but on the contrary averred that the fee of said street, as described in the bill, was in the city of Aurora.  Hence, the issue was directly made as to the ownership in fee of the property by the complainants in the original bill; and, this being so, a freehold is directly involved, and the cause was properly brought to this court.  It is said, however, by counsel for the appellee, that such allegation, as contained in the amended and supplemental bill, was admitted to be true by the demurrer thereto, and that, therefore, there was no issue upon that subject, which authorized the taking of the appeal to this court.  The theory of the amended and supplemental bill was, not only that appellant was the owner in fee to the center of the street in front of

his lot, but that the railroad to be constructed upon the street by appellee was a commercial railroad, that is to say, a railroad carrying both passengers and freight; and that, therefore, the construction of it was the imposition of a new or additional servitude in the street, for which the appellant, as the owner of the fee, was entitled to compensation. The bill avers not only that appellant was the owner in fee as above stated, but that no compensation had ever been paid to him for the use of the fee owned by him in said street, and that he had never consented to the occupation and use of said fee for the purposes of said traction company, and that said traction company had never attempted to condemn or purchase from him, his rights in the fee in said street; "and that the taking of your orator's land in said street for said purposes will be in violation of the constitutional rights of your orator." These, and other allegations in the amended and supplemental bill amount substantially to the charge that the appellee was seeking to take the property of appellant without making just compensation therefor in violation of the constitution of the State. For these reasons, also, the case has been properly brought to this court, as well upon the issues made by the demurrer to the amended and supplemental bill, as upon the issues made under the answers to the original bill. Accordingly, the motion to dismiss the appeal is overruled.

*Third*—It is claimed on the part of appellant, that the ordinance of May 27, 1902, was absolutely void, as authorizing certain individuals, rather than a corporation, to construct and maintain and operate a railroad in a public street of the city of Aurora. It cannot be denied that the ordinance of May 27, 1902, was and is absolutely void upon this ground, whether the railroad be regarded as a street railroad, or as a commercial railroad. The act of March 7, 1899, in regard to street railroads provides "that any company, which has been or shall be incorporated under the general laws of this State for the purpose of constructing, maintaining or

operating any horse, dummy or street railroad or tramway, may enter upon and appropriate any property necessary for the construction, maintenance and operation of its road," etc.   (Sess. Laws of Ill. 1899, p. 331).   The power here granted is to an incorporated company and not to an individual.   Paragraph 90 of section 63 of article 5 of the City and Village act provides that "the city council  *   *   * shall have no power to grant the use of or the right to lay down any railroad tracks in any street of the city to any steam, dummy, electric, cable, horse or other railroad company, whether the same shall be incorporated under any general or special law of the State now or hereafter in force, except upon the petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes; and when the street or part thereof sought to be used shall be more than one mile in extent no petition of land owners shall be valid, unless the same shall be signed by the owners of the land representing more than one-half of the frontage of each mile, and of the fraction of a mile, if any, in excess of the whole mile measuring from the initial point, named in such petition, of such street or of the part thereof sought to be used for such railroad purposes."   (1 Starr & Curt. Ann. Stat.—2d ed.—p. 712).   Paragraph 90, it will thus be observed, provides for a grant to an incorporated company, and not to an individual or individuals.

In *Goddard* v. *Chicago and Northwestern Railway Co.* 202 Ill. 362, a construction was given to the act of March 7, 1899, in reference to this question, and it was there held that the act by its terms only authorized the grant of street railroad privileges to companies, incorporated under the general laws of Illinois, and not to individuals or partnerships, and that the act should not be extended by construction to apply to individuals, since that would give to individuals the sovereign power of eminent domain, and could not be adopted, unless both the letter and the spirit of the act clearly

so required. In that case it was said (p. 368) : "The question is not whether a natural person, if the law so provided, might acquire a right of way, exercise the right of eminent domain, and enjoy the franchise to operate a street railway, but whether the law does so provide, and, if it is clear that it does not, the complainants acquired no right by the action of the county board. The legislature had power to limit the authority of the county board to grant a license to incorporated companies, created under the general laws of the State for the purpose of constructing and operating street railways, and it is not material what reason existed for prescribing the limit. It was a case for the exercise of the legislative judgment, with which we are not concerned. * * * The right to operate a street railway and collect fares for carrying passengers, and the power to exercise the right of eminent domain, are franchises. No private person can establish a toll bridge, public ferry, or railroad, or enjoy the franchise connected therewith, without authority from the legislature, either directly granted or by the exercise of legislative power through delegation to a municipality. (2 Smith's Law of Mun. Corp. sec. 1702). A franchise is a special privilege, conferred by grant from the sovereign power, not belonging to the citizen of common right. It must be derived from the laws of the State and emanate from the sovereign power, and it cannot be exercised by an individual on his own lands without the consent of the State." The same reasoning applies to paragraph 90 as above quoted. The grant there contemplated can only be to a company, and not to an individual. (*McGann* v. *People,* 194 Ill. 526; *Chicago Dock Co.* v. *Garrity,* 115 id. 155).

In line with the Illinois authorities is the case of *Allen* v. *Clausen,* 114 Wis. 244, where it is said: "Appellant's counsel needlessly argue at length for the natural right of individuals to receive such a franchise. That is not questioned, but only whether the legislature has empowered a municipality to grant it to them. As there is no pretense that de-

fendants or any of them are within such class of individuals to whom franchise is so authorized to be granted, we may, for the purposes of this case, consider the statute as if it in terms only authorized grants to street railway corporations, except, indeed, as the express mention of certain individuals the more clearly negatives grant to any others. That an authorization to grant such franchises only to corporations excludes any power to confer one on individuals, and renders void any attempt so to do, has been often decided by other courts."

In the case at bar, the ordinance of May 27, 1902, granted the right to lay down, maintain and operate a railway on Walnut street in front of the appellant's property to V. A. Watkins, and William George, of Aurora, and R. S. Vivian and William P. Kopf of Chicago. The grant was to four individuals, and not to any incorporated company, and hence, under the authorities already cited, the grant was absolutely void.

After the original bill in this case was filed on October 11, 1904, and on November 7, 1904, a new ordinance was passed, amending the ordinance passed on May 27, 1902, and, by the terms of the latter ordinance, the authority to construct and operate the road was conferred upon the appellee, the Aurora, DeKalb and Rockford Electric Traction Company, its successors and assigns. Subsequently, on December 17, 1904, the amended and supplemental bill herein was filed, which refers to the passage of the latter ordinance, and makes it an exhibit to said bill. It is claimed by the appellant that the ordinance of November 7, 1904, is merely amendatory of the ordinance of May 27, 1902, and that a void ordinance cannot be amended. And such is the law. (McQuillin on Mun. Ordinances, sec. 196; *People* v. *Onahan,* 170 Ill. 449; *Tedrick* v. *Wells,* 152 id. 214; *Schwartz* v. *City of Oshkosh,* 55 Wis. 490). On the other hand, it is claimed by the appellee that the ordinance of November 7, 1904, is an original and independent ordinance conferring

an original and independent privilege upon the appellee, and is not in any sense dependent for its validity upon the ordinance of May 27, 1902. This court has held that an act, which possesses all the attributes of a complete statute in itself, is not invalid because passed as an amendment to an act which had become inoperative. (*People.v. Onahan, supra; School Directors v. School Directors,* 73 Ill. 249; *Timm v. Harrison,* 109 id. 593). We are inclined to the opinion that the ordinance of November 7, 1904, may be regarded as an independent ordinance, and as possessing all of the attributes of a complete statute in itself. Its title contains the following words: "Granting the Aurora, DeKalb and Rockford Electric Traction Company, its successors, lessees and assigns, consent and the right to use, locate, lay down, construct, maintain and operate its railway as hereinafter provided, in, upon and along sundry streets and avenues in the city of Aurora, Illinois; also in said streets, the right to erect, use and maintain poles and overhead wires, and to build, construct and maintain underground conduits and tubes, with all necessary appurtenances, for the purpose of propelling its cars thereon by electricity or any other motive power, except steam." The body of the act confers upon the Aurora, DeKalb and Rockford Electric Traction Company the same rights as were conferred upon the four individuals, named in the ordinance of May 27, 1902.

*Fourth*—But it is insisted by the appellant that the ordinance of November 7, 1904, was ineffectual in any event, because is was enacted without any petition from consenting property owners. There was a petition to the mayor and aldermen of the city of Aurora by the owners of land abutting and having a frontage on Walnut street, etc., asking for a grant to Watkins, George, Vivian and Kopf, their representatives and assigns, of the right to use the street for the purpose of constructing, maintaining and operating thereon a railroad, etc. This petition was for a grant to the four individuals, and not to the appellee corporation. The property

owners, signing the consent, consented to an ordinance conferring the power to construct and operate the road upon certain individuals, but there is nothing to show that they ever consented to the grant of power to the appellee company to construct and operate the road.  Counsel for appellee say that the consent or petition was to the effect that the grant should be made to the four individuals named, "their representatives and assigns."  A written assignment is then produced, and is attached as an exhibit to the amended and supplemental bill, wherein Watkins, George, Vivian and Kopf assign, set over and transfer to the appellee corporation "all the title, interest, privileges and immunities granted to us, either jointly or severally, by a certain franchise hereinafter described, it being the purpose of this instrument to convey and assign to said traction company all rights by us owned or claimed, either jointly or severally, in and to said franchise or permit, to-wit: that certain franchise heretofore granted to the undersigned, their heirs, executors, administrators and assigns, by the city council of the city of Aurora, * * * known and entitled, 'Ordinance granting to W. A. Watkins, William George, R. S. Vivian and William P. Kopf, their heirs, executors, administrators or assigns, consent and right to use, locate, lay down, construct, maintain and operate a railway in certain streets and avenues in the city of Aurora, Illinois,' which said ordinance was passed May 27, 1902," etc.  This is not an assignment of the consent of abutting property owners.  It is an assignment of the rights and privileges and franchises granted by the ordinance of May 27, 1902.  As that ordinance was absolutely void, because of the grant to individuals instead of a company, there could be no valid assignment of it.

Independently, however, of this consideration, the ordinance of May 27, 1902, being invalid in attempting to confer rights on the four individuals, could not be valid because it authorized such individuals to assign the franchise or privileges conferred upon them.  This would amount to a delega-

tion of power by the city council to the four individuals to license a railroad company to construct and operate a railroad in a street of the city. An ordinance, attempting to so delegate power, is void. Legislative powers conferred upon municipalities cannot be delegated. In *City of Chicago* v. *Trotter,* 136 Ill. 430, we said (p. 433): "The powers that were granted by the State, and that are relied upon by the municipality, were delegated to the city council, and that body could not transfer its legislative prerogatives, and the public trust which was imposed upon it, to a mere executive officer." (See also *People* v. *Village of Crotty,* 93 Ill. 180). In *City of East St. Louis* v. *Wehrung,* 50 Ill. 28, it was held that where the power is conferred upon municipal corporations to regulate any calling or business, it is so done with the intention that such power shall be exercised by the corporations, and in the mode prescribed; and that they are not warranted in delegating a discretionary authority to others, or to an individual. In *Hickey* v. *Chicago and Western Indiana Railroad Co.* 6 Ill. App. 172, where the general railroad law conferred upon a railroad company authority to construct a railroad upon a street in a city with the assent of the corporation, it was held that, as the act contained no provision as to how such consent might be obtained, the action of the city council must be governed by the provisions of the general statute, relating to the incorporation of cities and villages; and it was also there held that cities have full power to regulate the location and use of railroad tracks within their corporate limits, but that this is a public power or trust, and can be exercised by the corporation when and in such manner as it shall judge best, but that such power cannot be delegated to others. It may be here observed that, in the case at bar, the act of March 7, 1899, in regard to street railroads, if it has any application here at all, provides that no such company shall have the right to locate or construct its road along any street in any incorporated city "without the consent of the corporate authorities of such city," but it is

not specified how such consent may be obtained, and, there-
fore, the action of the council must be governed by the provi-
sions of the general statute, relating to the incorporation of
cities and villages, which includes paragraph 90 of section
63 of article 5 as above quoted. It follows from what is said
that the appellee corporation could have obtained no authority
to construct and operate its railroad along Walnut street in
front of appellant's property by virtue of the power to assign,
given by the ordinance of May 27, 1902, to the four individ-
uals there named, and by virtue of the assignment executed
by such individuals to the appellee. The consent or petition,
signed by the property owners and appearing in the record,
could only apply to the action of the city council in passing
the ordinance of May 27, 1902. It could not be used as a basis
for the action of the city council in passing the ordinance of
November 7, 1904. In order to invest the common council
of Aurora with power to pass the latter ordinance, there
should have been a new petition by the requisite number of
property owners. This precise point has been recently de-
cided by this court. In *Vennum* v. *Village of Milford,* 202
Ill. 423, it was held that, where an ordinance, based upon a
petition of property owners, was invalid, and the confirma-
tion proceeding was dismissed, the same petition could not be
used by the improvement board as a basis for recommend-
ing another ordinance. The same principle announced in
*Vennum* v. *Village of Milford, supra,* applies here.

It is true that the title of the ordinance of November 7,
1904, contains these words: "This ordinance having been
duly petitioned for by the owners of land representing more
than one-half of the frontage of each and every mile and
fraction of a mile in excess thereof, or so much thereof as is
sought to be used by said traction company, of all that por-
tion of the streets hereinafter described." The ordinance of
November 7, 1904, including its title, or the description of
what the ordinance is, is an exhibit to the amended and sup-
plemental bill, and is, therefore, to be regarded as a part of

the bill.   In *Cummings* v. *West Chicago Park Comrs.* 181
Ill. 136, it was held that a recital in an ordinance providing
for an improvement, that the petition of the owners of a
majority of the land fronting on the improvement was pre-
sented to the municipal authorities, is sufficient *prima facie*
evidence of the existence of such jurisdictional fact. (See
also *McGann* v. *People,* 194 Ill. 526). If a recital in the title
to the act can be regarded the same as a recital in the body
of the act, then the recital above quoted from the title of the
ordinance of November 7, 1904, might be regarded as *prima
facie* evidence that the latter ordinance was duly petitioned
for by the owners of land, etc., under the issue made by the
demurrer to the amended and supplemental bill.   But the
amended and supplemental bill contains the allegation "that
there is on file in the city clerk's office of said city of Aurora
a petition from abutting owners of land on said Walnut
street, filed prior to the enactment of the first purported
license herein mentioned to said four natural persons, a copy
of which petition is hereto attached and marked 'Exhibit 3'
and made a part of this amended and supplemental bill, and
no other or different petition of abutters on said Walnut
street has been filed with said city council authorizing or at-
tempting to authorize in any way the enactment of the last
amendment of November 7, 1904." The demurrer to the
amended and supplemental bill admits the allegation in ques-
tion to be true, and it stands the same as though it were es-
tablished by proof.   Inasmuch as the recital in the title of the
act as above quoted can only be regarded as *prima facie*
evidence that the ordinance of November 7, 1904, was duly
petitioned for, such *prima facie* case thereby made is over-
come by the allegation that no other or different petition of
abutters on Walnut street was filed with the city council,
authorizing the enactment of the ordinance of November 7,
1904, except the petition or consent already referred to,
which preceded the ordinance of May 27, 1902, and upon
which the latter was based.   The allegation, that no other or

different petition of abutters was filed than the one already referred to, is not the statement of a mere conclusion, but is the statement of a fact. Counsel refer to the case of *Schuchert* v. *Wabash, Chester and Western Railroad Co.* 10 Ill. App. 397, as sustaining the contention that the allegation is merely that of a conclusion, but in the case in question the bill averred "that there was no such petition as the statute requires." This was the statement of the conclusion of the pleader that the petition did not conform to the requirement of the statute. But, in the case at bar, the allegation is of the fact that no other petition was filed with the common council than that set forth as preceding the ordinance of May 27, 1902. It is said that the statute does not require that the petition should be filed with the common council, but merely that the council shall have no power to make the grant in question "except upon the petition of the owners," etc. It is said that the petition might be presented to the common council in some other form than by filing it, and that it need only be exhibited or otherwise brought to the knowledge of the council. The bill alleges, however, and the demurrer admits it to be true, that the petition of abutting property owners, upon which the ordinance of May 27, 1902, was based was filed in the city clerk's office, and this being so, the presumption is that, if there had been another petition as a basis for the ordinance of November 7, 1904, it also would have been filed in the city clerk's office. The bill expressly alleges that it was not so filed, and the proper way of bringing such a document to the attention of the common council would be by filing it.

Moreover, the ordinance, which the property owners petitioned for, not only granted the right to construct and operate the road in Walnut street to the four individuals named, but it provided, in section 2, that the grant therein should extend for the term of forty years from the passage of the ordinance of May 27, 1902; but the subsequent ordinance of November 7, 1904, in addition to granting the authority re-

ferred to to the traction company, provided in section 2 that the grant therein should extend for the term of thirty-eight years from the passage thereof. *Non constat* that the property owners, who petitioned for a grant to individuals for forty years, would have been satisfied with a grant to a corporation for thirty-eight years.

"Without the statutory consents the street railroad company has no right to commence the construction of its road in the street as to which the consents are withheld; and any abutting property owner in that street, owning to the center thereof, can maintain an equitable action to restrain such construction, and need not prove special damage." (Nellis on Street Surface Railroads, sec. 10).

"Where the abutting owner has title to the fee in the street or where payment of compensation is by statute made a condition precedent, he may enjoin the construction of the road until compensation has been paid or tendered." (27 Am. & Eng. Ency. of Law,—2d ed.—p. 184, and cases in note).

*Fifth*—It has been held that a street railway is not an additional servitude, even where the fee of the street is in the abutting owner. But it is otherwise where a steam railroad, or what is called or known as a commercial railroad, is constructed in a pubilc street. The latter is regarded as an additional servitude. It has been said that, where the public have "only an easement in streets, and the fee is retained by the adjacent owner, the legislature cannot, under the constitutional guaranty of private property, authorize an ordinary steam railroad to be constructed thereon, against the will of the adjoining owner, without compensation to him. In other words, such a railway, as usually constructed and operated, is an additional servitude." (*Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co.* 156 Ill. 255). The term, "steam railroad," is used because the ordinary commercial railroad company, which carries both passengers and freight, is generally propelled by steam. But, in the present case, it is contended by counsel for appel-

lee that the character of the motive power is not controlling in determining the question of whether the railroad to be constructed is a street railway or not, or whether its construction is or is not an additional servitude. Counsel for appellant say, "We assume this position to be in accord with the decisions of courts generally, and it follows from this that the fact that steam is not used as a motive power on this road is not of controlling importance."

The next question that arises, therefore, is as to the character of the road to be constructed by appellee. If the road so to be constructed be regarded as merely a street railroad, it cannot be regarded as an additional servitude, and the appellant is not entitled to an injunction against its construction even though he is the owner of the abutting property and of the fee of the street in front thereof to the center of the same. Counsel for the appellee thus state the question succinctly in their brief: "The main question in this case is whether the railroad, which the appellee company proposes to construct, will be a commercial railroad, or a street railway." If it is a commercial railroad, appellant is entitled to compensation before it can be built over that part of the street opposite his lot, which he owns in fee subject to the easement of the public.

It is to be noted that the railroad to be constructed by appellee is nowhere spoken of in its articles of incorporation, or in either of the ordinances granting power to construct it, as a street railroad. A comparison of the provisions of its articles of incorporation with the requirements of the general Railroad act will show that it conforms exactly to the latter act. Indeed it is conceded that the appellee is a corporation, organized under the general Railroad law of the State, and not under the Street Railroad act. Lewis in his work on Eminent Domain (vol. 1, sec. 110*a*) says: "Railroads now exist in great variety as regards motors and motive power, the size and style of cars and coaches, and methods of operation and construction. It is probable that these variations

will be multiplied in the coming years. It is doubtful whether any permanent and satisfactory classification can now be made. There has been a general concurrence, however, in embracing all railroads in two divisions or classes: (1) commercial railroads, and (2) street railroads. Commercial railroads embrace all railroads for general freight and passenger traffic between one town and another or between one place and another. So far they have not been successfully operated, to any extent at least, except by steam. They are usually not constructed upon the public streets or highways except for short distances. Street railroads embrace all such as are constructed and operated in the public streets for the purpose of conveying passengers with their ordinary hand luggage from one point to another on the street."

In *Diebold* v. *Kentucky Traction Co.* (Ky.) 77 S. W. Rep. 674, it was said: "It certainly can make no difference whether the cars of a railroad company are propelled by the agency of steam, or of gasoline, or of electricity, compressed air, liquefied air, or any other agency which science and the inventive genius of man may in the future bring into use. Rather the character of a railroad company is determined by the nature and extent and limits put upon its operation by law or otherwise and by the character and object of its corporate creation, as shown by its charter." By the terms of its charter the appellee here is to run, not in one city alone, but from the city of Aurora in Kane county, north-westerly through Kane, DeKalb, Ogle and Winnebago counties to the city of Rockford in the latter county, together with branches or auxiliary lines of road necessary or convenient to its operation. The appellee road is evidently not to be constructed for the purpose of conveying passengers with their ordinary hand luggage from one point to another on the street, but is to convey them, as commercial railroads do, from one place to another and from one county to another. The charter of appellee provides that it shall continue for a period of fifty years. The general Railroad law provides that no corpora-

tion shall be formed to continue more than fifty years in the first instance, (3 Starr & Curt. Stat.—2d ed.—p. 3226), while the act of March 7, 1899, in regard to street railroads, provides that the consent of the corporate authorities of a city to construct a street railroad along any street in the city may be granted "for any period not longer than twenty years." As the corporate existence of the appellee is to continue for some thirty-eight or forty years, it is certainly not a street railroad, so far as the extent of its life as a corporation is concerned. In *Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295, we said (p. 307): "There is a wide and well understood difference between a railroad organized for general traffic, and a street, horse or dummy railroad. * * * A street railroad, as is well understood, is a road constructed on a street or highway for the purpose of conveying passengers, living upon or having business on such street or highway, its main object being to accommodate street travel." In *Hartshorn* v. *Illinois Valley Traction Co.* 210 Ill. 609, we said that street railways are railways on or upon streets of a city or town, and that a street railway may not, like a steam railway, locate its route in order to reduce time and distance for passengers traveling from town to town across the country, and that, as such location of its route is not for the accommodation of local travel on highways or streets, it therefore "involves a perversion of the character and objects of street railways." A railway, authorized to carry freight as well as passengers, becomes a commercial railroad, instead of a street railroad, and such railroad, when laid in a street, becomes an additional burden on the fee, and cannot be laid without the consent of, or compensation made to, the adjoining property owners. (*Linden Land Co.* v. *Milwaukee Railway Co.* 107 Wis. 511).

In *Schaff* v. *Cleveland M. & S. Ry. Co.* 66 Ohio St. 229, it is said by the court: "Besides, this company is authorized not only to carry passengers, but also to transfer over the road, 'baggage, packages, boxed and barreled freight, farm

216—34

produce, express matter, and United States mail;' and although it is required to run cars over its road at least three times each way daily it is not limited as to the number of cars, or trains, for freight or passengers, or both combined, or the size or make-up of the trains. All things considered, it is reasonably certain from the facts found that the practical operation of such a road, within its capacity, must necessarily produce annoyance and inconvenience to the plaintiffs, and interfere with their property rights as abutting owners, of the same general character that result from the operation of steam railroads, and become an additional burden on the public highway, and taking of the plaintiff's property in the same sense. * * * But the appropriation for this purpose cannot be constitutionally made without making compensation to the public for the injury thereby occasioned to its easement in the highway; and also making compensation to the owner of private property taken for the use indicated."

In the case at bar, the ordinance of November 7, 1904, as well as the previous ordinance of May 27, 1902, contains the following provision: "The said tracks and railways shall be used for no other purpose than to transport passengers and their ordinary baggage, United States mail, express, milk; and the cars and carriages for that purpose shall be of the style and class ordinarily used on such railways in other cities. No freight shall be carried by said grantee, its successors or assigns, excepting such as is used in the construction of their road within the limits of the city of Aurora." Thus, the road to be constructed by appellee is authorized to carry not only passengers and their ordinary baggage, and United States mail and express matter, but also milk. It cannot be said that a railway, which is authorized to carry one kind of freight, is not a commercial road within the meaning of the definitions above quoted. The fact, that a road is limited to the carriage of one kind of freight, does not make it any the less a commercial railroad, which is defined to be one, which carries both freight and passen-

gers.   Again, the ordinance authorizes the appellee corpo-ration to do such excavating and grading as it may deem necessary for the proper laying of its tracks, thereby fail-ing to confine the laying of its tracks to the surface of the street.   It is also authorized by the ordinance to connect its tracks with the tracks of any railway company, owning or operating tracks in the city of Aurora for the purpose of forming the loop referred to in the ordinance.   The ordi-nance also provides that the authority, granted to appellee, is to be used for the public purposes of a railway connect-ing with the interurban tracks, when laid, of the Aurora, DeKalb and Rockford Electric Traction Company.

In our opinion the railroad to be constructed under ap-pellee's charter, and under the ordinances authorizing it to lay its tracks in the streets of Aurora, is what is called a commercial railroad, and is not a street railroad within the definite and fixed meaning of the latter term.   Being a com-mercial railroad, it constitutes a new and additional servitude upon the fee of the property owner to the center of the street. Therefore, inasmuch as appellant, the owner of lot 9 abutting on Walnut street, is an owner of the fee of the street in front of his lot to the center thereof, and inasmuch as the appellee is about to construct a new and additional servitude in the street upon his property without having paid him any com-pensation or instituted any condemnation proceeding, he was entitled to an injunction in accordance with the prayer of his bill.

For the foregoing reasons, the decree of the circuit court was erroneous, and the same is hereby reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*