JOHANN NIEMAN ET AL. v. THE DETROIT SUBURBAN STREET RAILWAY COMPANY.

*Street railways—Location of tracks—T rails—Injunction—Parties.*

1. A bill by several land-owners to restrain the construction of a street railway in an adjoining street can be maintained only upon the theory that there is some grievance common to all, resulting in a damage common to all.
2. An ordinary electric street railway may be constructed without proceedings to condemn the right of way; citing *Detroit City Railway v. Mills*, 85 Mich. 634; *People v. Railway Co.*, 92 Id. 522; *Dean v. Railway Co.*, 93 Id. 330.
3. There is no authority for holding that a street railway may not be laid in any part of the public highway when so authorized by the franchise under which it is constructed and operated.
4. The use of a T rail by a street-railway company does not establish the commercial character of its road.

Appeal from Wayne. (Donovan, J.) Argued October 10, 1894. Decided December 22, 1894.

Bill to enjoin the construction of a street railway along a certain highway. Complainants appeal. Decree affirmed. The facts are stated in the majority opinion.

*William Look* and *H. F. Chipman,* for complainants.

*Charles M. Swift,* for defendant.

GRANT, J. The defendant is organized under chapter 95 of Howell's Statutes, known as the "Street Railway Act." Its purpose, as declared in its articles of association, was—

"To construct    *    *    *    and operate street railways in and through the streets of the city of Detroit and of the suburbs thereof, extending through the roads and streets of the townships of Hamtramck, Greenfield, Springwells, Grosse Pointe, Dearborn, Ecorse, Monguagon, and the city of Wyandotte, and through the streets of the villages in said townships."

In March, 1891, the township board of the township of Ecorse granted to it a franchise for constructing and operating such railway through the township over what is known as the "Monroe" or "River" road. The rails were to be laid flush with the surface of the street, were to conform to the grade thereof, and to be so constructed as to least inconvenience or obstruct public travel. The space between the rails was to be kept in good condition, sufficiently hard and smooth to afford good ground for wagon travel, or paved with cobble stones, or planked, or laid with crushed stone, at the option of the defendant. The track was to be laid in the center of the highway, and so as to leave a driveway on each side at least 14 feet wide. Defendant was to be allowed to use either motor or electric power to propel its cars. It was at liberty to lay any approved street-railway rail except a T rail. In November following, the franchise was amended by the town board, permitting the company to construct its road upon the east side of the highway, the center of the railway to be within 22 feet of the east line of said highway, and the west rail to be 11 feet east of the center of said highway, to be determined by a survey made by a

103 MICH.—17.

competent engineer at the expense of the company. The ends of the ties projecting outside the track adjacent to that part of the highway used for public travel were to be filled and packed hard, flush with the top of the ties, and the center of the track between the rails was to be ballasted flush with the rails, as near as could be done without interfering with the safe running of cars. It was also permitted to use a T rail, so laid as to least inconvenience public travel; and at all road, farm, and house crossings the tracks were to be planked flush, so as to leave no obstruction to foot or wagon travel. These are all the provisions of the franchise which it is necessary to mention. The Monroe road was an ordinary country highway, with ditches on each side of that portion provided for travel. The defendant was proceeding to construct its road, when the complainants, 18 in number, filed this bill, claiming irreparable damages to their property, and praying that the defendant be enjoined from constructing it.

The bill can be maintained only upon the theory that there is some grievance common to all, resulting in a damage common to all. The bill alleges, and there is evidence tending to prove, grievances and damages special to one or more of the complainants. Such bill cannot be maintained, and we need consider only those objections to the road which are common to all. These are:

1. That the franchise confers the right to construct an ordinary commercial railway, and that it is the intention to construct such road.

2. That the operation of the railway will irreparably injure the complainants' property.

3. That the defendant is pecuniarily irresponsible.

Upon the filing of the bill, a preliminary injunction was granted. An answer was filed denying that the defendant intended to construct a commercial railroad, or

any other than an ordinary street railway, such alone as it was authorized by the law to construct, and denying fully all the material allegations of the bill. Upon filing this answer the preliminary injunction was dissolved, and the defendant proceeded to construct its road. At the time of the hearing the railroad had been constructed and operated for a considerable time. For six months it used a motor. It then changed and equipped its road with the trolley system, with electricity as the motive power, and it is now the ordinary electric street railway, such as this Court has held to be authorized by the law, and which may be constructed without proceedings to condemn the right of way. *Detroit City Railway v. Mills,* 85 Mich. 634; *Dean v. Railway Co.,* 93 Id. 330; *People v. Railway Co.,* 92 Id. 522.

The right to grant this franchise for the construction of a street railway such as this is was conceded by counsel for the complainants upon the argument. Their chief complaint is that it should have been laid in the center of the highway. We are cited to no authority holding that such railroad may not be located in any part of the the public highway. It seems clear that a road so located would better convenience public travel on a country highway than if placed in the center of the traveled portion thereof. It is not seriously contended that this is not so, but it is insisted that it is so near the frontage of some of the complainants' premises as to interfere with the use thereof. The track may be so near the buildings of some of the complainants as to entitle them to a remedy, provided that they themselves have not encroached upon the public highway. The bill alleges that this highway varies in width from 44 to 66 feet. It is contended by the defendant that the road was laid out to a uniform width of 66 feet, and that such complainants have unlawfully en-

croached upon it.  We pass no opinion upon this, as it is a grievance common to but few of the complainants.  The franchise specially and particularly provided for the construction of the road so as to afford proper ingress and egress to the owners of adjoining lands.  Where the highway is 66 feet wide, ample space is left between the tracks and the line of land abutting on the highway for the construction of sidewalks and all other necessary and convenient purposes.  This is a compliance with the law, because no one is deprived of the use of the highway, or of ingress and egress to his property.

The use of a T rail does not establish the commercial character of the road.  The evidence shows that this rail can be used without serious trouble and inconvenience.

The proofs establish these facts:

1. The substantial compliance with the provisions of the franchise.  The road is constructed on the grade of and flush with the highway, and was so done under the direction of the highway commissioner.  The center between the tracks is filled as required.

2. The construction of this road is a great convenience to the public.

3. It has enhanced the value to a very great extent of the lands situated along its line, including those of the complainants.

4. Its removal or disuse would result in irreparable injury to the defendant and its assignees, which now owns and operates it.

It is claimed that this case is ruled by *Nichols v. Railway Co.*, 87 Mich. 361.  The distinction is so apparent, and will be so readily seen upon a comparison of the facts of the two cases, that we refrain from comment upon them.

The decree is affirmed, with costs.

LONG, MONTGOMERY, and HOOKER, JJ., concurred with GRANT, J.

McGRATH, C. J. *(dissenting).* I cannot concur with my associates in the conclusion reached herein. Defendant's track is supposed to occupy a portion of the roadbed ordinarily devoted to travel. If so constructed as to exclude the public from that part of the roadway used by it, complainants have a right to complain. Street-railway use of streets or highways cannot be allowed to be exclusive. This railway is constructed upon a sandy roadbed, with a T rail. One of defendant's witnesses describes it as "a very deep, sandy road." The roadbed was cut in some places and in others filled. It is conceded that at certain points the top of the rail is below the surface of other portions of the road, so that a rain washes the sand upon the rail; and, as one of defendant's witnesses says, the rails have to be brushed off in order that the electric connection may be made.

I think that it is the duty of defendant to restore the road to its former condition for the purpose of travel, and to so construct its road that the public shall not be excluded from that part of the highway. The only difference between the surface of this road as constructed at any point and that of the ordinary commercial road is that the space between the rails and immediately outside of the tracks is filled in, not with gravel or cinders or some substance that will carry wagon wheels, but with sand, through which the wheels plough until they reach the rails. Under the statute requiring railroads to restore the highway, the space between the tracks, and for a short distance outside the tracks, is planked or paved, so as to admit of free passage over the tracks. It is contemplated that the portion of streets and highways occupied by street-railway tracks is to be used by the public with the other portions of the highway. I do not think that defendant should be allowed to maintain or operate the road until this objectionable feature has been removed.