FREUD *v.* DETROIT & PONTIAC RAILWAY CO.

CANDLER *v.* SAME.

1. Street Railways—Encroachments on Private Property—Injunction.
   A corporation operating a suburban electric railway has no right, upon the refusal of an abutting owner to sell a strip of land desired by it, to enter thereon, without any attempt to exercise the power of eminent domain, cut shade trees, grade the property, and construct its track; and equity will enjoin it from so doing.

2. Same—Location of Tracks—Authority of Township Board.
   The provision of 2 Comp. Laws, § 4097, relating to the improve-

ment of the public highways, that no earth shall be dug, plowed, or scraped nearer than eight feet of the margin of the highway without the consent of the abutting owner, does not limit the power of the township board under section 6446, so as to prevent it from authorizing the construction of a street railway within eight feet of the highway line. MOORE and MONTGOMERY, JJ., dissenting.

Appeals from Oakland; Smith, J. Submitted November 19, 1902. (Docket Nos. 106, 107.) Decided June 23, 1903.

Bills by Leopold Freud and by Homer W. Candler and others to enjoin the Detroit & Pontiac Railway Company from constructing its track on complainants' lands. From decrees dismissing the bills, complainants appeal. Reversed.

*Keena & Lightner* (*John H. Patterson*, of counsel), for complainants.

*James H. Lynch* (*Fred A. Baker*, of counsel), for defendant.

MOORE, J. This is an appeal from a decree dismissing injunction bills. The circuit judge was of the opinion that complainants had a remedy at law. The following statement of facts, which is fully justified by the record, is taken from the brief of the solicitors for complainants:

"The two cases in the above title were heard together. The circuit judge filed one opinion in the two cases. Separate decrees were entered, and appeals taken. Except for the description of the property, the amended bill of complaint in the Freud case is substantially identical with the bill of complaint in the Candler case, and the answers of defendant are substantially identical.

"The complainant Freud, in the one case, and the complainants Candler Bros., in the other case, are owners of separate parcels of land fronting on the west side of the Detroit & Birmingham Plank Road, which is a continuation of Woodward avenue, in Detroit. The Candler property includes a little less than 20 acres, and was bought by

them from Mary Granger in 1892 or 1893. It is situated a short distance northerly of the boundary between the counties of Wayne and Oakland, and it has a frontage on Woodward avenue, so called, of about 924 feet. The Freud property adjoins the Candler place immediately on the north. It includes about 29 acres, and was purchased by Mr. Freud in 1893. It has a frontage of about 750 feet on Woodward avenue. The highway was originally the Saginaw Turnpike, and its location and width were established by the legislature. Act No. 107, Sess. Laws 1857. The width of the road was to be four rods,—two rods on each side of the center of the then existing plank road.

"As early as 1867, the Granger families owned and occupied both the Freud and Candler properties. In that year they improved both places, and before the year 1870 there had been planted along the front line of both properties shade trees, outside of which had been built a fence marking the line of the highway as to both properties. Within the fence on the Candler place, and not far from the house, was sunk a well, which remained until it was destroyed by defendant, in May, 1900. * * * Along the front of complainants' property, the highway (that is, the space between the fences on either side) was nearly, if not quite, 66 feet in width; the graveled part of the plank road being about in the center of the highway as thus defined. The line of the fences was not in all places on a straight line, and the graveled road meandered slightly, but their lines were substantially as above stated.

"In January, 1895, the township of Royal Oak, in which all of the property mentioned is situated, gave a franchise for the construction of an electric street railway along Woodward and other thoroughfares to George Hendrie, Fred A. Baker, Stephen Baldwin, John C. Donnelly, and Strathearn Hendrie. On October 21, 1895, the Detroit & Birmingham Plank-Road Company granted permission to the Oakland Railway Company to occupy the highway for the construction of a single-track electric railway along Woodward avenue, under conditions set forth in the contract. In pursuance of these contracts, the Oakland Railway Company, during the years 1895 and 1896, constructed a single-track electric railway from Detroit to Birmingham and Pontiac; the track being laid in the highway on Woodward avenue between the traveled part of the plank road and the fences which had marked the line of the complainants' two properties for many

years. In the construction of this single track, and the operation of it, none of the trees were removed from the front of either of the properties, nor were the fences disturbed, unless possibly at the upper end of Freud's land the fence which had stood outside of the trees was then placed immediately to the west, and behind the trees; also some of the trees at the upper end of Mr. Freud's property had some of their limbs cut off by the railway company, so as not to interfere with the poles and wires used in the construction and operation of the plant.

"On March 21, 1899, the Oakland Railway Company secured the privilege from the Detroit & Birmingham Plank-Road Company for the construction of a double-track where previously it had maintained only a single-track railway. Previous thereto, the railway company had purchased from Mr. Porter, who adjoined complainants on the north, a strip of land one rod wide along the front of his property, and immediately north of Freud's land. During 1899 the railway company constructed a double-track railway from Royal Oak southerly to the northerly line of Freud's property; building the tracks in such a way as to protect the line of trees which had previously marked the front of Mr. Porter's land.

"The defendant, the Detroit & Pontiac Railway Company, succeeded to any rights which the Oakland Railway Company had in the railway, in 1897 or 1898. Previous to May 1, 1900, at which time defendant began the destruction of the trees in front of both properties, and the removal of the fences thereon, no request for permission to appropriate their property and no negotiations of any kind were had by defendant, or by any one on its behalf, with any of the Candlers. As to Mr. Freud's property, there had likewise been no negotiations of any kind, except with a Mr. Springsteen, who, claiming to represent defendant, saw Mr. Freud, and made an offer to pay him for the privilege of constructing the double track. Mr. Freud refused to sell his property for the amount which Springsteen proposed, viz., $1,000, and told him he preferred to have the railway laid in the center of the road; Mr. Springsteen having suggested that Mr. Hendrie owned a controlling interest in the graveled road, and could do so.

"Without further warning, defendant's men, under the personal instruction of its manager, entered upon the complainants' properties with a large force of men; moved the fences back a distance of substantially seven feet along

the line of both properties; cut down all of the trees, which had stood along this line for 30 years or thereabouts; filled in the well on the Candler property; graded the entire front, utterly regardless of the slope of the land on the adjoining properties, or of the grade of the plank road; and constructed upon this property a double-track railway, built substantially as commercial railways are constructed, placing trolley poles immediately against the fence in its new location, and having the ties and the rails of the inner track, throughout a large part, if not all, of the length of the properties, on the land which had previously been included within the fences of complainants.

" Complainant Freud immediately applied to the Oakland circuit court for an injunction restraining these trespasses; his original bill being filed on May 2, 1900. The circuit judge refused to grant an *ex parte* injunction, except to restrain the defendant from cutting trees. As the trees had already been cut down, the injunction was of no use whatever to complainant. Upon a hearing after notice, the circuit judge refused to grant any preliminary injunction. Since defendant continued its trespasses, and was apparently appropriating complainants' land by building its railway in defiance of complainants' rights, complainants, on May 10, 1900, served written notice upon defendant that they intended severally to prosecute their suits to a conclusion, that defendant should cease its trespasses, and that any expense incurred by defendant in placing its track as proposed would be done at defendant's risk. On May 7, 1900, Mr. Freud filed his amended bill of complaint, and the Candlers at the same time filed their original bill of complaint. Before answer in either cause, and on May 16, 1900, amendments were filed, setting forth further objections to defendant's appropriation of complainants' property. The defendant answered the bill in each case. The defendant continued the construction of its railway, and at the time of the hearing, in the fall of 1901, it had constructed a double electric-railway track along and upon the front of these properties."

The action of defendant is wholly outside the law. The complainants moved promptly, and attempted to prevent the unlawful cutting down of the trees and the encroachment made upon their properties. If the defendant may forcibly take possession of a strip of land seven feet wide belonging to complainants, because it thinks it needs it, it

has the right to take any quantity of their land. If the defendant is organized under a law which authorizes it to exercise the right of eminent domain, if it could not agree with the owners of the land, it was its duty to do so before entering upon the land. If it is not authorized to invoke the law of eminent domain, and cannot agree with complainants upon a purchase of the land, it was not justified in taking it by force. It does not, by reason of being a corporation, occupy any different relation than an individual in that respect. The principles involved are so fully discussed, and the authorities collected, in recent cases decided by this court, that we deem it unnecessary to more than call attention to them. *Nichols* v. *Railway Co.*, 87 Mich. 361 (49 N. W. 538, 16 L. R. A. 371); *Kennedy* v. *Railway*, 108 Mich. 390 (66 N. W. 495); *Stock* v. *Township of Jefferson*, 114 Mich. 357 (72 N. W. 132, 38 L. R. A. 355); *Donovan* v. *Allert*, 11 N. Dak. 289 (91 N. W. 441, 58 L. R. A. 775).

An important question presented by the record is whether defendant has any right to maintain any part of its track within eight feet of the line of the highway in front of the property of complainants. Section 4097, 2 Comp. Laws, provides, among other things, as follows:

"*Provided*, that no earth shall be dug, plowed, or scraped nearer than within eight feet of the margin of the highway, without the consent of the owner of the premises adjacent thereto."

This law was passed in 1885. Act No. 160, Pub. Acts 1885. It is claimed by defendant that it was passed at a time when electric roads were unknown; that, as a rule, they cannot be constructed without encroaching upon the prohibited space; and that the uses to which highways are now put are contrary to the spirit of the statute, and it should not be enforced. If counsel are right, their argument is one which should be addressed to the legislature, rather than the judicial branch of the government.

It is also claimed the law of 1885 is amended, by implication, by the statute whose provisions are contained

in sections 6470, 6471, 2 Comp. Laws. This statute undertakes to confer upon electric roads a method of acquiring the right to use a portion of the highways controlled by plank-road companies; but it is expressly provided therein " that the provisions of this act shall not be so construed as to affect the rights of abutting property owners or the rights of the public in such highways." We think it clear the legislature did not intend by this statute to amend the law of 1885, and that the railway company had no right to construct any portion of its road nearer than eight feet of the street line without the consent of the abutting proprietor.

It is suggested that as the limitation to the removal of earth within eight feet of the margin of the highway is found in a chapter headed, "The Performance of Labor on Highways, and the Commutation Therefor," the provision is a mere limitation on the right of the overseer of highways to enter upon the eight-foot strip in building or improving the public highway, and that it does not limit the power of the township board to grant this right to a street-railway company. Section 1, art. 11, of the State Constitution, provides for the election of commissioners of highways and overseers of highways, whose powers and duties shall be prescribed by law. We cannot see any more appropriate place, when laws are to be enacted relating to the use of highways, and the character of the improvements thereon, than to place these provisions in the chapter the heading of which has been quoted. When the legislature undertook to confer upon the township board the right to grant to a street-railway company the right to run its road in and along the highways of the township, in the absence of anything to indicate to the contrary, it may safely be presumed the legislature had in mind the limitations and provisos in the statute which had been placed there in the interest of the owner of the land, and did not intend to do away with them, and, by the use of the term " highway," referred to such a highway as the laws of the State provided for.

What we have said as to the power conferred by the legislature upon the township board will apply equally to plank-road companies. The needs of such a company are simply for such a portion of the highway as will provide for a roadbed 16 feet wide. The highway continues to be a public highway, though a corporation is authorized to make a plank or gravel road thereon and charge toll. Should the term of the charter end, or it become forfeited, the highway would become at once a normal highway. There is nothing in the needs of the plank road, or in the statute authorizing its construction, which indicates the legislature did not intend the proviso in relation to the eight-foot strip to apply to highways of this character.

The decree of the court below should be reversed, and one entered here perpetually enjoining the defendant from trespassing on the property of complainants, and requiring it to remove all portions of its track and ties eight feet easterly of where the highway fence was before it was removed. The case should also be remanded for the purpose of enabling proofs to be taken for the purpose of ascertaining how much damage has been sustained by complainants, after said railway track has been removed as above required, by reason of the unlawful acts of defendant. The complainants should recover costs of both courts.

MONTGOMERY, J., concurred with MOORE, J.

CARPENTER, J. We fully concur in the opinion of our Brother MOORE that complainants are entitled to an injunction compelling defendant to remove its track, and that they are entitled to compensation for the damage done them. We cannot, however, assent to the proposition that the provision of section 4097, 2 Comp. Laws, quoted in said opinion, prohibits the construction of a street railway within eight feet of the margin of the highway. That provision is found in the chapter headed, "The Performance of Labor on Highways, and the Com-

mutation Therefor." The section in which it is found
(viz., section 4097, 2 Comp. Laws) reads:

"All road work hereafter done upon roads that have
been opened and worked for ten years or more, except such
·as may be required for necessary repairs, shall have in view
the permanent improvement of such roads by graveling
and turnpiking. Elevations upon the line of such roads
shall be cut down, and the depressions raised, in order to
form a grade as level as the nature of the ground will per-
mit. Any surplus earth or gravel, taken from one portion
of the road, may, with the consent of the highway com-
missioner, be used to fill such depressions in any other road
in the same district: *Provided*, that no earth shall be
dug, plowed, or scraped nearer than within eight feet of
the margin of the highway, without the consent of the
·owner of the premises adjacent thereto. Such roads shall
be worked so as to form a turnpike sufficiently crowning
to turn the water, with gutters adequate for drainage, and
the width of the turnpike shall be not less than ten feet on
·each side of the center line of the road, terminating in the
center of the gutter. Any person may, under the direc-
tion of the overseer of highways, be allowed to remove
snow from the traveled highway, to haul gravel or other
material for the repair of roads, at any time during the
year, and a receipt for the work so done shall apply on his
next assessment of highway labor."

It seems to follow that the proviso in question is a mere
limitation on the right of the overseer of highways to
·enter upon this eight-foot strip in building or improving
the public highway. The overseer of highways is not
given the power to determine the location in a highway of
the tracks of a street-railway company. The township
board, by virtue of section 6446, 2 Comp. Laws, would
seem to have that power. See *Nieman* v. *Railway Co.*,
103 Mich. 256 (61 N. W. 519); *Township of Spring-
wells* v. *Railway*, 122 Mich. 486 (81 N. W. 336). We
think it clear that this power of the township board is not
limited by a statute which applies only to the overseer of
highways in building or improving the highway. We do
not think this court can determine whether the track of
the street-railway company should or should not be located

on the eight-foot strip in question. We do think that we have no power to say that it should not be located there, if the township board determines that it should.

The decree should be as suggested in the opinion of Justice MOORE, except that it should not require defendant to remove its track and ties eight feet easterly of where the highway fence was before it was removed.

HOOKER, C. J., and GRANT, J., concurred with CARPENTER, J.