## William H. Cadwell *vs.* The Connecticut Railway and Lighting Company et als.

First Judicial District, Hartford, May Term, 1911.
Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

A street-railway company, although authorized by the State to use the highways, may operate its lines therein with so little regard to the rights of others as to render itself liable in damages to an abutting property-owner and resident who is injured thereby; for its franchise is not a license to do unnecessary or unreasonable injury to others. A reasonable and normal use of its property however, although attended by more or less dust, noise and vibration, will not subject the company to liability, since these and other like annoyances are incidental and inevitable, and among the penalties which a modern, busy life imposes upon those who come in closest contact with it.

The plaintiff, who owned and occupied a dwelling-house in New Britain adjacent to a street in which the defendant's tracks were laid, alleged in his complaint that the defendant ran great numbers of crowded passenger-cars, early and late, week days and Sundays, in said street, also "express" and "work" cars, and cars "having noise-causing defects," and that the noise, vibration and dust caused thereby annoyed him and his family, interfered with the comfort and quiet enjoyment of his home, and diminished the value of his property. There was no allegation to the effect that any of these acts were in excess of the defendant's franchise rights. *Held* that aside from the allegation respecting the running of cars having noise-causing defects, the complaint was clearly insufficient in that it failed to set forth any actionable injuries; that the excepted allegation lacked the requisite degree of certainty, since it might apply merely to such disabled or defective cars as the company was properly taking from time to time to the repair-shop or place of refuge; and therefore a demurrer to the complaint as a whole was properly sustained.

A street-railway company has the power to maintain and repair its line, and for that purpose to run "construction" or "work" cars carrying material and workmen.

Argued May 2d—decided June 15th, 1911.

Action to recover damages for injuries to the plaintiff and his dwelling-house adjoining a highway, which

were alleged to have been caused by the noise, vibration and dust arising from the operation by the defendants of a street railway in such highway, brought to the Superior Court in Hartford County where a demurrer to the complaint was sustained (*Burpee, J.*) and judgment rendered for the defendants, from which the plaintiff appealed. *No error.*

The three defendant corporations are alleged to be, respectively, the owner, lessee, and present operator of a street-railway system, one line of which has for many years extended along West Main Street in New Britain in front of premises owned and occupied since 1902 as a residence by the plaintiff. It is alleged that the second of these corporations at one time prior to June 1st, 1907, itself operated the system, it being succeeded by the third named. The allegations which follow are these: "6. The defendants, day by day, have operated, and The Connecticut Company operates on said railroad on said land, great numbers of passenger-cars. 7. The defendants, day by day, have operated, and The Connecticut Company operates on said railroad on said land, cars called express-cars. 8. The defendants, day by day, have operated, and The Connecticut Company operates on said railroad on said land, cars early in the morning and late at night. 9. The defendants, on divers days, have operated, and The. Connecticut Company operates on said railroad on said land, work-cars, at times, in trains carrying construction and building material and gangs of workmen. 10. The defendants, on divers days, have operated, and The Connecticut Company operates on said railroad on said land, cars having noise causing defects. 11. The defendants, on divers week-days, have operated, and The Connecticut Company operates on said railroad on said land, in the summer time, a great number of cars running at short distances from each other and

crowded with passengers inside, and at times, in the case of open cars, on the running boards. 12. The defendants have operated, and The Connecticut Company operates on said railroad on said land, on Sunday, in the summer time, a great number of cars running at short distances from each other, and crowded with passengers inside, and at times, in the case of open cars, on the running boards. . . . 14. The noise, vibration and dust caused by the operation of said railroad on said land as above described is and has been an annoyance to the plaintiff and his family and greatly disturbs and interferes with the comfort and quiet enjoyment of his home. 15. By reason and because of the noise, vibration and dust caused by the operation of said railroad on said land, as above described, the value of said land and dwelling-house has been greatly diminished and the plaintiff greatly damaged thereby."

*Charles H. Mitchell,* with whom was *William C. Hungerford,* for the appellant (plaintiff).

*John T. Robinson* and *Francis W. Cole,* for the appellees (defendants).

PRENTICE, J. A corporation operating a street-railway system in a highway may expose itself to legal proceedings at the hands of an abutting landowner under varying conditions. It will do so, if it is operating its system in and through the highway without authority from the State. If such authority has been obtained, its system may be so constructed and operated as to impose upon the land which has been appropriated for the highway an additional servitude, within the meaning and definition of the opinions of this court. *Canastota Knife Co.* v. *Newington Tramway Co.,* 69 Conn. 146, 36 Atl. 1107; *New York, N. H. & H. R. Co.*

v. *Fair Haven & W. R. Co.*, 70 Conn. 610, 40 Atl. 607. It may have such authority as the State can give for the construction of its lines, and that construction and operation may be such as to impose no additional servitude upon the highway, and yet the manner of that construction or operation may be such as to render it liable to the person who is thereby damaged in his property rights.

There is no claim that the defendants who have successfully operated the line in question, and who for convenience will be hereinafter referred to as the defendant, have invaded the highway in question in its construction and operation, without authority from the State. Counsel for the plaintiff also concede in their brief that no construction or operation of the road which is within the authority of the charter imposes an additional servitude upon the highway. It is apparent that the complaint would be wholly inadequate in its allegations, if the right of recovery was based upon the imposition of a new servitude in that way. They also state that they have not alleged that the mode of construction or operation actually employed was such as necessarily to work a new, direct, and special damage to the plaintiff. It is manifest from the allegations, and even more plainly from the brief of counsel, that the burden of the plaintiff's grievance which he has tried to present is that the defendant has been operating its lines and conducting its traffic in the highway in front of his premises to his annoyance and damage, by reason of the improper and unreasonable manner in which it has been doing it, and that he seeks redress, not because it has been carrying on a business and traffic which was unlawful as being without authority, but unlawful on account of the way in which it was conducted. In discussion they have unnecessarily entangled the right of action which the plaintiff would

have under such circumstances with the question whether or not an additional servitude was not thereby imposed, not upon the highway, but upon the adjoining land. The claim which he has to present involves no such complications as are thus gathered around it.

There is no more simple or certain proposition than that the defendant, if it is making use of its property and rights in a way that is not reasonably incident to the business it is authorized to carry on, and so as thereby to cause unnecessary and unreasonable annoyance, harm, or damage to the enjoyment of the plaintiff's property and rights, is liable in damages. It is no more exempt than other people from the operation of the rule of law expressed in the maxim *Sic utere tuo ut alienum non lœdas.* Its franchise affords it no license to do unnecessary or unreasonable injury to others. It is bound to conduct its business with a reasonable regard under the circumstances for the rights of others. This does not, however, signify that every annoyance, inconvenience, or feature which might be regarded as objectionable, and to which damage might be traced, attending the construction or operation of a street railway, furnishes the foundation of an action. Certain unpleasant, inconvenient, and disturbing features, from the point of view of an adjoining owner, naturally attend public travel upon a highway, if there is any considerable amount of it. This is distinctly true of highway use by street-cars, and the greater the public demand and service, the greater these features almost certainly are. Dust cannot well be kept down, and vibration and noise in some measure is inevitable. Such things as these, and other annoyances and inconveniences which result from a user of a highway which is consistent with a legitimate and proper use of it as a public thoroughfare,

are among the penalties which a modern and busy life imposes upon those who come closest in contact with it. A user of a highway by a street railway forms no exception. Certain objectionable results are among its natural incidents. In so far as this is the case, and the consequences complained of flow naturally and normally from the conduct of the traffic under proper authority, in a reasonable manner and with due regard for the rights of others, one who conceives that he has been injured can have no redress. *State ex rel. Howard* v. *Hartford Street Ry. Co.*, 76 Conn. 174, 183, 56 Atl. 506; *Roebling* v. *Trenton Pass. Ry. Co.*, 58 N. J. L. 666, 674, 34 Atl. 1090. If the line is operated with reasonable care, and so as to produce only that incidental inconvenience which unavoidably follows the occupation of the street by the operation of its cars, with the noises and disturbances necessarily attending their use, no one can complain. Whatever consequent annoyances may necessarily follow from the running of the road with reasonable care is *damnum absque injuria.* *Baltimore & P. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, 331, 2 Sup. Ct. Rep. 719.

But whenever annoying, disturbing, or other damage-producing conditions are created through a failure to regulate the conduct of the business with a reasonable regard for the rights of others, or through means which are not reasonably incident to it, then a right of action arises. Joyce on Nuisances, § 73. Anything wrongfully done or permitted, which injures or annoys another in the enjoyment of his legal rights, constitutes a private nuisance. 2 Cooley on Torts (3d Ed.) 1174; *Nolan* v. *New Britain*, 69 Conn. 668, 678, 38 Atl. 703; *Baltimore & P. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, 329, 2 Sup. Ct. Rep. 719; *Norcross* v. *Thoms*, 51 Me. 503. The plaintiff's road to redress is a direct one, and leads through no circuitous bypaths, if he has the

facts to establish a construction or operation of the defendant's road at the point in question in such a manner as to cause him annoyance or damage without reasonable justification in the nature and conditions of the business it is carrying on.

The plaintiff does not complain of the construction of the road-bed or street structure. His grievance is entirely confined to the manner of operation. Do his allegations make out a case of the kind indicated?

He alleges that the defendant, day by day, operates on its line in front of his premises where he resides a great number of cars; that it runs its cars early in the morning and late at night; that it has on divers weekdays and on Sundays run its cars in great numbers and with only a short distance between them; and that on such days it has run them crowded with passengers, even to the running-boards of open cars, at times. Here we have a statement which indicates a large public demand upon the company, as a common carrier, and an attempt to meet the demand. The recital is one of familiar conduct in centers of public travel, and for aught that appears the conduct outlined was reasonable under the conditions, in so far at least as the plaintiff can be heard to complain. The over-crowded passengers might perhaps have a just grievance, but it is difficult to discover how the plaintiff can have one resulting from an attempt to furnish transportation in response to the public demand.

He avers that the defendant operates "express-cars." We assume from counsel's concessions that no claim is made that an additional servitude has been imposed upon the highway; that by "express-cars" are meant passenger carrying cars which do not stop at call, but at stated points somewhat distantly removed from each other. If so, the plaintiff clearly has no grievance arising therefrom. If he desired to go further, and set up

that transportation of goods was being carried on in excess of the company's rights in the highway, and, therefore, to his injury, his concessions should not have been made, and his allegations should have been made more certain. If the carriage of goods is within the right of the company in the exercise of its highway. easement, there is nothing shown which tends to indicate unreasonable conduct of the business.

He says that the defendant, at times, runs work-cars carrying construction and building material and gangs of workmen. Manifestly it was intended by this allegation to charge no more than that, as occasion requires, it runs these trains for the purposes of its own construction and repair work. The necessary construction and repair of its plant and such maintenance of the highway as may be imposed upon it is certainly embraced in its incidental powers, and there is nothing unreasonable or improper in its availing itself of the facilities afforded by its lines, or, so far as appears, in the method which it has adopted in doing so.

The remaining charge is that on divers days the defendant has operated and is operating "cars having noise-causing defects." It is, of course, true, that the use by the defendant of cars which are unnecessarily noisy by reason of defects, and thereby annoying and disturbing to persons residing along its line, may amount to an actionable nuisance. It will do so if this use is without reasonable justification. There may be such justification upon occasions. Disabled or defective cars must be taken to a place of refuge, and upon a system doing the large business which this company, under the allegations, apparently does, such occasions may not be infrequent. It is to be noted that the allegation, unlike those made in respect to many of the acts complained of, is not that the company is running such cars day by day, or habitually, but that on divers

days it has and is doing so. It is not averred that it has done so without reasonable excuse. The plaintiff has in this paragraph come nearer to setting up actionable conditions than in any other portion of his complaint, but we are of the opinion that he has fallen short of his duty in respect to certainty of allegation, and left it uncertain whether he attempted to state a condition of which he could rightfully complain. Had he such a condition in mind, it would have been easy to state it in unmistakable language. We come to this conclusion the more readily since counsel upon the argument disavowed any desire to found a right of action upon this allegation, if the complaint was otherwise insufficient.

There is no error.

In this opinion the other judges concurred.