WILLIAM H. CADWELL *vs.* THE CONNECTICUT COMPANY.

First Judicial District, Hartford, March Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Acts done within the limits of a highway may work an actionable injury to an abutting proprietor and occupant, either as a trespass, if he be the owner of the fee, or as a nuisance.

Where the acts are connected with the maintenance and operation of a street railway without legal authority, or, being in excess of such authority, impose an additional servitude upon the land covered by the highway, a trespass is committed entitling the fee owner to redress.

A complaint which seeks such redress should set out the plaintiff's ownership of the fee.

A complaint which alleges the maintenance of an electric street-railway over a highway in a portion of which the plaintiff is a fee owner, and its operation for claimed unlawful purposes or in an unlawful manner, and is silent as to the existence of legislative authority for such maintenance and manner of operation, cannot be properly demurred to unless the court can take judicial notice of the existence of such authority.

Judicial notice that a street railway has a legislative franchise to construct and maintain its road over a portion of a street is not suffi-

Cadwell *v.* Connecticut Co.

cient to establish, for the purposes of a demurrer, that this franchise extends to that portion of the street which lies in front of a particular owner, and, in connection with § 3840 of the General Statutes, is not sufficient to show the existence of legislative authority to operate its line at that point for the carriage of property.

The maintenance and operation of an electric street-railway, as ordinarily constructed, for the transportation of property as well as persons, does not necessarily impose an additional servitude upon the land of a highway. Whether or not an additional servitude is imposed by the manner in which property carrying is conducted by such a street railway, is a question which cannot be determined by the application of any self-operating rule, but must be left for determination upon the facts of each case and situation. The same general principles are to be applied to urban and interurban service, and the controlling consideration in each case must be one as to whether or not, all things considered, the new use is in the line of, and in furtherance of, highway use, or an essentially different and independent use.

The complaint alleges that the defendant has constructed along the highway in front of the plaintiff's premises an electric street-railway equipped with T-rails and poles and wires, extending from New Britain to Plainville, and having no station or stopping place save at these two termini, that for some time it has been and is operating such railway as a common carrier of both persons and property, and that in such operation it uses cars designed and used for the carriage of property solely, and which do not stop as they run to take on or discharge such property. *Held:*—

1. That these allegations are sufficient to enable the plaintiff to establish under them an invasion of his rights as fee owner, and that they ought not to have been disposed of on demurrer, but should have been allowed to stand to be dealt with after the pertinent facts of the situation had been more fully developed by the pleadings or upon a hearing.

2. That the use of T-rails was not a controlling factor.

Argued March 5th—decided May 16th, 1912.

ACTION to recover damages for injuries to the plaintiff's land and dwelling-house caused by the operation of the defendant's electric street-railway over the plaintiff's land within the highway and in front of his premises, brought to the Superior Court in Hartford County where a demurrer to the complaint was sustained *pro forma* (*Greene, J.*), and judgment rendered for the de-

Cadwell *v.* Connecticut Co.

fendant, from which the plaintiff appealed. *Error and judgment reversed.*

The complaint alleges the plaintiff's ownership and possession of a tract of land in New Britain bounded on one side by West Main Street. The remaining allegations are the following: "2. Running between the Town of Plainville and the Town of New Britain there has been constructed an electric railway, the track of which is built with T-rails, and the cars of which are operated by the use of said track and certain poles and wires. 3. A part of said track built with T-rails, one of said poles and certain of said wires are located upon and over a part of said land, above described, which is covered by a public highway called West Main Street. 4. On or about June 1, 1907, the defendant, for the purposes of maintaining said electric railway as described upon said land; and for the further purpose of operating said electric railway upon said land as a common carrier of persons and property by means of street cars; and for the further purpose of operating said electric railway upon said land as a common carrier of property by means of cars which are solely designed for and which carry property exclusively and which do not stop as they run, to take on and discharge said property and have a station in the Town of Plainville and the Town of New Britain at which they stop to take on and discharge said property; unlawfully entered upon that part of said land, above described which is covered by said public highway called West Main Street, and ever since its entry, day by day, has maintained said electric railway as described upon said land; and ever since its entry, day by day, has operated said electric railway upon said land as a common carrier of persons and property by means of street cars, and ever since its entry, day by day, has operated said electric railway upon said land as a common carrier of property

by means of cars which are solely designed for and which carry property exclusively and which do not stop as they run, to take on and discharge said property and have a station in the Town of Plainville and the Town of New Britain at which they stop to take on and discharge said property."

*Charles H. Mitchell,* for the appellant (plaintiff).

*Lucius F. Robinson* and *Francis W. Cole,* for the appellee (defendant).

PRENTICE, J. Acts done within the limits of a highway may work an actionable injury to the property rights of an abutting proprietor and occupant by virtue of either his ownership of the fee of the land covered by the highway, or his ownership and possession of the abutting property. *Cadwell* v. *Connecticut Ry. & Ltg. Co.,* 84 Conn. 450, 452, 80 Atl. 285. In the former case, the acts may constitute a trespass. This is the case whenever the acts, being without authority, or in excess of authority, are such as impose an additional servitude upon the land covered by the highway. *Canastota Knife Co.* v. *Newington Tramway Co.,* 69 Conn. 146, 161, 36 Atl. 1107; *Norwich Gas Light Co.* v. *Norwich City Gas Co.,* 25 Conn. 19; *Nicholson* v. *New York & N. H. R. Co.,* 22 Conn. 74; *Munson* v. *Mallory,* 36 Conn. 165, 172. In the latter case, the injured party has his remedy as for a nuisance. *Cadwell* v. *Connecticut Ry. & Ltg. Co.,* 84 Conn. 450, 454, 80 Atl. 285.

This action, unlike that last cited, which was also brought by this plaintiff against this defendant, and dealt with the same general situation, is one which belongs to the former class. It seeks redress, as the former did not, for an alleged invasion of the plaintiff's rights, as owner of the soil of the highway, through certain

conduct of the defendant therein, which is set out, and claimed to have been without right. The two cases thus have little in common. In the former, we were dealing with an alleged nuisance affecting injuriously the rights of the plaintiff as an abutting owner; in the present, with a claimed trespass done to the land within the highway limits.

· This complaint is not drafted with precision, in that it does not directly aver either the plaintiff's ownership and possession of the land over which the highway is laid out, or the defendant's invasion of the plaintiff's rights therein by its acts set up. There are, however, allegations from which these averments may well be inferred, and in which it was evidently intended that they should be included, so that the purpose of the pleader to charge a trespass upon the land within the highway, through the operation of the recited acts of the defendant in imposing an additional servitude thereon, is apparent. Counsel for the plaintiff so interprets his pleadings, and counsel for the defendant accept it as sufficiently alleging a cause of action of that character.

The latter suggest that a cause of action for a nuisance may also be within the purview of the allegations. Plaintiff's counsel makes no such claim, and there appears to be no substantial basis for it. It is quite evident that the averments respecting rails and structures, which the plaintiff makes, and which alone give color to the suggestion that the complaint may be regarded as comprehending a cause of action for a nuisance, were made for no other purpose than as pertinent to the charge that a servitude was being imposed upon the land of the highway in excess of that resulting from the existing highway easement.

We have, then, before us for determination the single question whether or not the allegations of the com-

plaint show the imposition upon the soil of the highway of an additional servitude. In answering this question it is first of all important to know what legislative authority, if any, the defendant had to construct and operate an electric street-railway in front of the plaintiff's premises. The complaint is silent upon this subject, and unless we can gather adequate information upon it through the exercise of that judicial knowledge which we have of its charter rights, the defendant will be left in the position of one who invades a highway with a street railway without legislative authority. If that is the position which the defendant occupies before the court under its demurrer, it is clear that it was improperly sustained. It is not easy to discover how it can escape from this position, with its inevitable result, since the charter informs us only that it has legislative authority to construct and operate, for the carriage of both persons and property, its tracks through a portion of West Main Street. Where that portion is in relation to the plaintiff's property we are not told, and neither legal presumptions, nor § 3840 of the General Statutes, suffice to supply the deficiency.

If, however, it be assumed that the defendant has constructed and operated its road in front of the plaintiff's property under such conditions as to entitle it to the full benefit of the charter and statute authority to utilize it for the transportation of passengers and property, as counsel agree that the fact is and ask us to assume, we are under the necessity of examining the allegations to learn whether they set up any conduct on the defendant's part outside of the limits of the authority thus attempted to be conferred, or within those limits, but without the power of the General Assembly to confer, in the absence of compensation to landowners.

The allegation that it has constructed its tracks with T-rails, and that its cars are operated upon such tracks

and by the use of certain wires and poles, in the absence of further information, may be dismissed from present consideration. It is true that an additional servitude may result from methods of construction and operation, but the bald facts here stated are altogether insufficient to establish such a condition as that principle contemplates. *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 159, 36 Atl. 1107; *Nieman* v. *Detroit Suburban Street Ry. Co.*, 103 Mich. 256, 260, 61 N. W. 519; *Newell* v. *Minneapolis, L. & M. Ry. Co.*, 35 Minn. 112, 27 N. W. 839; *Mordhurst* v. *Ft. Wayne & S. Traction Co.*, 163 Ind. 268, 71 N. E. 642.

The other conduct complained of is the unlawful entry upon the land of the highway for the purpose of maintaining its electric railway, of operating this railway upon said land as a common carrier of persons and property by means of street-cars, and of operating said railway upon said land as a common carrier of property by means of cars designed solely for and carrying property exclusively, and which run without stopping between termini located in different towns, which termini are the only points where what is carried is either taken on or discharged, and the continued doing in fact of these things for the period of several years prior to the commencement of the action.

Here are three distinct grounds of complaint. The first, that the defendant is maintaining in the street an electric street-railway using poles and wires in its operation and T-rails for its tracks, calls for no extended consideration. The *Canastota Knife Co.* case effectually disposes of any contention that the construction and operation according to customary methods, and without especial features creating exceptional conditions, of an electric street-railway having its rails laid on a level with the surface of the highway, and designed and used for the accommodation of passenger

travel, imposes an additional servitude upon the soil of the highway. There is no suggestion in this portion of the complaint that the service performed by the defendant's railway is other than the customary passenger service, that the manner of its construction, operation, or use differs in any respect from the ordinary, or is marked by special features which would tend to give to it a different character from that of the regulation electric street-railway, except perhaps the fact that T-rails are used. The inadequacy of this isolated fact we have already had occasion to notice.

· The two remaining grounds of complaint import another factor into the situation, and one which takes it outside of the direct application of the decision in the *Canastota Knife Co.* case, and of all other Connecticut decisions. It calls for a consideration of the rights of an electric street-railway company in the matter of property transportation, directly for hire, and not as an incident of passenger service. The complaint contains certain charges involving this subject. If in the doing of any of the things so charged, the defendant is going further in its use of the highway than it can properly do within the limits of the highway easement, a good cause of action is stated.

The subject of the ability of an electric street-railway company, having the customary construction and operation in a highway, to become a carrier of things without imposing an additional servitude, has been much discussed in the cases and by text-writers, and with widely varying results. In at least one jurisdiction it has been broadly held that highways are as open to use in the transportation of property by street-railways as in that of persons, and that such carriage of property generally is not a new and independent use. *Montgomery* v. *Santa Ana Ry. Co.*, 104 Cal. 186, 37 Pac. 786.

This broad conclusion has not met with general acceptance, and we are unable to appreciate the force of the reasoning by which it has been supported. To say that because highways ever have been and are established and maintained for purposes of public travel, and in their conception and purpose are, and from the earliest times have been, set apart for transportation thereon of things as well as persons, and for the convenience and service of the public by providing means for such transportation, it follows that any and all use of the highway for the transportation of things, no matter what they are, or how, or for what purpose or end, or for whose benefit or convenience they are carried, or what effect their carriage, or the method of it (physical features of the system apart), may have upon the enjoyment of the highway by the public generally or by the abutting property owner, is, we think, to ignore possible factors in a situation which might possess large, if not controlling, importance.

The highway conception involves the idea of an agency for the common use and accommodation of all the public—of a use from the enjoyment of which no one shall be unreasonably excluded by the operations of others, and in the enjoyment of which no one shall be unreasonably hindered or annoyed. *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 156, 36 Atl. 1107. In that conception, the highway becomes a place set apart for the convenience and benefit of members of the local community and of the adjacent landowner among others. It contemplates that its use and enjoyment by those who have occasion to use it shall not be of such character as to unreasonably interfere with its free and beneficial enjoyment by these persons, or to be the "proximate cause of special damage, of a new description, to the owner of the soil." *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146;

159, 36 Atl. 1107; *New York, N. H. & H. R. Co.* v. *Fair Haven & W. R. Co.*, 70 Conn. 610, 615, 40 Atl. 607. We are therefore unprepared to say that any change in highway use which might attend the carriage of property over public ways, whatever its character and however conducted, construction of the road and structures in the highway aside, would be one of degree only and not of kind, and that the highway would remain in all essential particulars unchanged in character, purpose, and use under all conditions of property transportation over it. It is easy to conceive of conditions, and by no means remote ones, under which it could not be said fairly that the use was in aid of the identical use for which the way was created, and not a new and independent use; and this is a test which must be met and satisfied. This view is one which was plainly foreshadowed in the *Canastota Knife Co.* case and the earlier case of *Imlay* v. *Union Branch R. Co.*, 26 Conn. 249. In fact, the opinion in the former case went so far as to suggest certain conditions of passenger traffic, independent of construction, which would destroy the identity of use between it and highway use. 69 Conn. 154, 36 Atl. 1107.

Other cases have gone to the other extreme, and held that, where there is carriage of property, there an additional servitude is necessarily imposed. *Wilder* v. *Aurora, D. & R. E. Traction Co.*, 216 Ill. 493, 75 N. E. 194; *Birmingham Belt Ry. Co.* v. *Lockwood*, 150 Ala. 610, 43 So. 819; *Rische* v. *Texas Transportation Co.*, 27 Tex. Civ. App. 33, 66 S. W. 324. The argument upon which this conclusion is based is one to the general effect that, where such conditions exist, the carrier becomes closely assimilated to ordinary railroads, and should therefore be classed with them in their relation to the highway easement. Some authorities, including text-writers, elaborate this argument by dividing carriers using tracks

as a medium of transportation into two classes, to wit:
(1) the street railway, which is defined to be one laid
in highways, and designed and used for passenger
transportation only; and (2) the commercial railroad,
which term is employed in the classification to embrace
the ordinary steam road and all others, whatever the
kind of power utilized, and wherever laid, which are.
carriers of things. This classification having been es-
tablished, it is said that those of the former class impose
no additional servitude, while those of the latter do.
1 Lewis on Eminent Domain (3d Ed.) § 150; 1 Nellis on
Street Railways (2d Ed.) § 83; *Linden Land Co.* v.
*Milwaukee Elec. Ry. & Lt. Co.*, 107 Wis. 493, 511, 83
N. W. 851; *Wilder* v. *Aurora, D. & R. E. Traction Co.*,
216 Ill. 493, 75 N. E. 194; *Rische* v. *Texas Transporta-
tion Co.*, 27 Tex. Civ. App. 33, 66 S. W. 324; *Schaaf* v.
*Cleveland, M. & S. Ry. Co.*, 66 Ohio St. 215, 64 N. E.
145.

The logic of the general proposition enunciated in this
class of cases and of this classification is not apparent to
us. The purposes for which highways always have
been, and now are, laid out, and the right of way there-
for acquired, include their use for the transportation
thereon of property as well as that of persons. Their in-
tended ministration to the public convenience and ad-
vantage is one which comprehends a public service in
both capacities. What basis in reason there is for a
distinction between conditions which result from the
application of like improved methods when made to
the carriage of persons and when made to the carriage
of things, unless reason for that distinction be found in
something besides the bare fact that in the one case
it is persons and in the other property which is con-
cerned, we are unable to discover. It well may be that
the application of the new methods to property carry-
ing in given cases, or conceivably in all cases, may take

such shape and involve such incidents as to create reasons for a recognition of the fact that in those cases an additional servitude will thereby be created. But that is a very different thing from saying that there can be no property carrying without destroying the identity of the highway use for the simple reason that the subject of the carriage is property.

It is easy to conceive how the denial of the right to utilize new methods in the carriage of things over a highway without transgressing the right of way involved in the highway easement might result in serious inconvenience and disadvantage to the public, whose interest the highway was designed to serve, and to the local public most directly concerned, and a material diminution of the highway privilege which they are entitled to enjoy. *Mordhurst* v. *Ft. Wayne & S. Traction Co.*, 163 Ind. 268, 71 N. E. 642. Inability to carry property includes inability to carry mails, or packages for local delivery, or to accommodate the strictly local public in any manner of transportation of things. Can it be fairly said that in no service of this character can conditions be found which, by reason of the inherent nature of the service, will not be in excess of the highway privilege. We think not, and, furthermore, that the incidents of such service are not necessarily such that it must be said of them that they are incompatible with highway use.

There are other cases which have drawn a distinction between urban and interurban service, and attempted to find in that distinction a feature of significance, if not controlling significance, in the determination of the question before the court. *Zehren* v. *Milwaukee Elec. Ry. & Lt. Co.*, 99 Wis. 83, 74 N. W. 538; *Younkin* v. *Milwaukee Light, H. & T. Co.*, 112 Wis. 15, 87 N. W. 861; *Harvey* v. *Aurora & G. Ry. Co.*, 174 Ill. 295, 51 N. E. 163. See 3 Dillon on Municipal Corporations

(5th Ed.) § 1258. We can discover no good reason for this distinction, at least under our system where the public easement is for the benefit of all the public alike without regard for territorial subdivisions, and where the character of a highway and of the highway easement is the same wherever it is located, and however great or small the extent of its service. *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 154, 36 Atl. 1107; 3 Dillon on Municipal Corporations (5th Ed.) § 1258.

We are satisfied that the question for solution is one which cannot by reason of its nature be resolved in any of the ways indicated. It is one which may present itself under too many widely differing aspects to be resolved in respect to all which may arise by any such artificial process as the application of a simple test which regards a single fact or incident only, and ignores all others. The several tests indicated possess the merit of simplicity, but no one of them is founded in a sound logic, avoids practical difficulties, or escapes what may be harsh results to the public, and results defeating the very purpose of a public way. The practical difficulties attending their application are apparent. We are satisfied that there can be no short cut to a reasonable and just conclusion under the varying conditions which may arise, and one which shall serve the best interests of the public, including abutting owners themselves. Such a conclusion is one which can be reached only by a study of the conditions which are present in a given case, or in given classes of cases, and by bringing to bear upon these conditions those pertinent considerations which are best calculated to disclose whether the new use is in aid of the highway use, or an essentially different and independent use.

We have no occasion here to attempt an exhaustive recital of those considerations. We have already had

occasion to notice a number of them, and, sufficiently for present purposes, called attention to the objective point of inquiry, the general direction of it, and the salient suggestive facts to be looked at.

The fact that this is the only method by which satisfactory results can be arrived at is emphasized by a study of the cases which have sought to adopt more direct methods. Dillon and other writers, realizing the difficulties which must beset an attempt to adopt shorter and simpler processes, have asserted, and we think correctly, that after all each situation must be dealt with upon its own merits. 3 Dillon on Municipal Corporations (5th Ed.) p. 2032 note; Nichols on Eminent Domain, § 100. This is substantially the attitude which certain courts have taken. *White* v. *Blanchard Bros. Granite Co.*, 178 Mass. 363, 366 *et seq.*, 59 N. E. 1025; *Mordhurst* v. *Ft. Wayne & S. Traction Co.*, 163 Ind. 268, 71 N. E. 642; *Schaaf* v. *Cleveland, M. & S. Ry. Co.*, 66 Ohio St. 215, 64 N. E. 145.

Turning now to the allegations of the complaint, we find that it is there charged that the defendant in the operation of its road has been and is transporting property as well as persons. This charge, standing, as it does, by itself and without amplification, is under our conclusion insufficient to establish conduct which is outside of highway rights. It is, however, further averred that its road is operated as a carrier of property by means of cars designed for and carrying property exclusively, and which run from terminus to terminus, presumably some miles distant from each other, without stopping to receive or discharge contents, and receiving and discharging such contents at the two termini only.

In the *Canastota Knife Co.* case it was suggested that a passenger traffic road running under similar conditions, and not serving and accommodating the public as it ran, might not be rightfully operated in a highway with-

out creating an additional servitude. Here is set up a situation where all local accommodation is prima facie excluded. The company in the operation of its property carrying cars does not serve and accommodate as they run, and the highway is apparently put to a use in which there is no purpose to facilitate its most natural and normal use. Under the allegations the transportation might well be for the general purposes of commerce rather than as an adjunct of ordinary street travel, and the service rendered thus brought into close affiliation with that rendered by ordinary freight carrying roads of the steam variety. 3 Dillon on Municipal Corporations (5th Ed.) § 1259; *Kinsey* v. *Union Traction Co.,* 169 Ind. 563, 584, 81 N. E. 922. The allegations are not as full and as informing concerning the situation as they should have been made, but they are sufficient to enable the plaintiff to establish under them an invasion of his rights as fee owner; and they ought not to have been disposed of upon demurrer, but should have been allowed to stand to be dealt with after the pertinent facts of the situation had been more fully developed by the pleadings or upon a hearing.

There is error, the judgment is reversed and the cause remanded to be proceeded with according to law.

In this opinion HALL, C. J., THAYER and RORABACK, Js., concurred.

WHEELER, J. (concurring in the judgment). The complaint alleges the defendant's unlawful entry upon the plaintiff's land; the demurrer admits this. While we take judicial notice of the legislative authority of the defendant to operate an electric railway for the carriage of persons and property, we cannot take judicial notice of the authority of the defendant to locate its tracks on West Main Street in front of the plaintiff's premises.

Before we can know this, the facts surrounding the location, and the defendant's compliance with the statutory prerequisites, must appear of record. "But the construction of any kind of railway in a highway, the soil of which belongs in fee to the adjoining proprietors, is a trespass upon their land, unless it has been duly authorized by law." *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 160, 36 Atl. 1107.

Since the decision of this question is fatal to the demurrer, it is, in my opinion, unnecessary to discuss or decide the question of additional servitude. A subject of such importance ought not to be disposed of without fullest argument, upon issues joined raising the question definitely and necessarily. I cannot but regard the opinion upon this subject as obiter. The question of additional servitude was no more material to the proper decision of the *Canastota Knife Co.* case than is that question material to the proper decision of this case. But we have in other cases approved the doctrine of that case, and it must be accepted as settled. Inasmuch as the opinion in this case discusses, and purports to decide, the question of additional servitude in its relation to the facts of this case, I will briefly express my view.

The fundamental purpose of a street railway is the accommodation of street travel. It is a local convenience for local travel. "A street railway without a street to run on, and to serve and accommodate as it runs, would be an anomaly." BALDWIN, J., in *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 154, 36 Atl. 1107. For this reason we have treated the street railway as an improved method of using the street. Counsel for the street railway in the *Canastota Knife Co.* case well said: "In a word, the street railway is for the sole purpose of carrying on the kind of public travel for which the highway was made, and the steam road is not."

Cadwell *v.* Connecticut Co.

In the earlier days of the electric street-railway it was generally held that it was one for the transportation of passengers and not of goods. Elliott on Roads (1st Ed.) p. 457.

At the beginning we did not contemplate a street railway operated as a common carrier of property, nor anticipate the changes and development in its business, more and more approximating it in construction, as well as in operation, to the steam road.

We have held that the "location of an ordinary steam railroad upon a highway imposes an additional burden upon the soil, for which the owner of the fee is entitled to demand compensation"; and that the location of an electric railway in a highway does not impose such servitude upon the soil of the owner of the fee of the highway unless "either the mode of construction or of operation be such as to make it a substantial impediment to public travel or a proximate cause of special damage, of a new description, to the owner of the soil." *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 150, 159, 36 Atl. 1107.

It may be that in view of our former decisions, whether the carriage of goods by a street railway is an additional servitude depends upon whether it is serving an ordinary highway use, and must be determined in each case by its own facts. In the application of such a test there may well be left out of consideration the traffic of goods which is the mere incident of ordinary street-car passenger traffic, included in which is the hand baggage of the passenger, the light package delivered occasionally from the car platform, the mail-bag, and the newspaper bundle. Logically, under this test, the carrying of local freight and express which would otherwise be carried in vehicles over the highway, may be justified as ordinary highway use. But in practice it will be found impracticable to deliver freight or ex-

press from door to door along a street without impairing the use of the street for a highway for the public and the adjoining owners.

No attempt to use a street railway for the general carriage of local freight or express has, so far as we are aware, ever been made in Connecticut. To do so would require additional and frequent switches and turn-outs, convert the highway along its entire length into a freight yard, cause long stops to be made which would seriously inconvenience, if not destroy, passenger traffic, and congest the streets with vehicles loading or unloading goods. Local passenger travel with frequent service and a local freight or express service cannot be conducted on the same tracks. The operation of a street railway in this manner must necessarily produce annoyance and inconvenience alike to the owners of the fee of the highway as to the public. 1 Lewis on Eminent Domain (3d Ed.) § 166.

It is difficult to conceive of a local traffic of this character which is not, of necessity, an additional servitude upon the highway. "There is no reason," as Lewis says, "why the principle of the street railway cases should be extended to include a traffic so entirely different in its nature and involving such a different use of the street." 1 Lewis on Eminent Domain (3d Ed.) § 166, p. 293.

In every case where the specific facts are either alleged or proven, the conclusion, whether these facts constitute an additional servitude, is a question of law. This case does not confine its allegations to a general complaint of the carriage of goods, and hence this question was not necessary to adjudicate in this case. The complaint specifically alleges that the defendant has entered upon the plaintiff's land for the purpose of operating its railway over the highway of which the plaintiff has the fee, "as a common carrier of property

Cadwell *v.* Connecticut Co.

by means of cars which are solely designed for and which carry property exclusively and which do not stop as they run, to take on and discharge said property and have a station in the Town of Plainville and the Town of New Britain, at which they stop to take on and discharge said· property."

The demurrer thus admits that (1) the cars carry property exclusively; (2) that they do not stop between the termini named to take on and discharge property; and (3) that they have two stations in the places named where they take on and discharge property.

This traffic is not incident to the passenger traffic. It is not for the mere accommodation of its passengers. It is purely a commercial traffic. Local traffic along the route is not served, nor is this intended. The cars maintain a through freight or express traffic between the points named. The street railway thus serves the same purpose as the steam road between these points. Its cars are designed to carry property exclusively, as do the steam road cars. It maintains freight stations at the termini named as does the steam road. It conveys property which formerly was conveyed by the steam road and in part by other vehicles. It diverts a part of the traffic of the steam road to the highway. It does not differ materially in its carriage of goods from the steam road save in degree, and in that the one operates on its own private way, and the other mainly on the public highway. Through freight or express traffic is the business of the "commercial railroad," as steam roads are called in the law. 3 Dillon on Municipal Corporations (5th Ed.) §§ 1257, 1258.

"If the interurban railroad carries freight as well as passengers, the analogy to the steam railroad is complete. Most of the freight so carried is such as would otherwise seek transportation on the steam railroad rather than in drays and wagons on the streets and

highways." 1 Lewis on Eminent Domain (3d Ed.) § 165, p. 287.

The diversion of this through freight or express business to this highway does not aid or facilitate traffic on the street, but adds to it, interferes with its ordinary use and increases the burden upon the street.

The majority of the authorities support this position, among which are: *Aurora* v. *Elgin, A. & S. Traction Co.*, 227 Ill. 485, 496, 81 N. E. 544; *Spalding* v. *Macomb & W. I. Ry. Co.*, 225 Ill. 585, 590, 80 N. E. 327; *Wilder* v. *Aurora, D. & R. E. Traction Co.*, 216 Ill. 493, 528, 75 N. E. 194; *Diebold* v. *Kentucky Traction Co.*, 117 Ky. 146, 149, 77 S. W. 674; *Massachusetts L. & T. Co.* v. *Hamilton*, 88 Fed. Rep. 588, 591; *Abbott* v. *Milwaukee Light, H. & T. Co.*, 126 Wis. 634, 637, 106 N. W. 523; *Younkin* v. *Milwaukee Light, H. & T. Co.*, 120 Wis. 477, 98 N. W. 215; *Chicago & N. W. Ry. Co.* v. *Milwaukee, R. & K. E. Ry. Co.*, 95 Wis. 561, 571, 70 N. W. 678; Note to *Abbott* v. *Milwaukee L., H. & T. Co.*, 4 St. Ry. Rep. 1077; *Schaaf* v. *Cleveland, M. & S. Ry. Co.*, 66 Ohio St. 215, 229, 64 N. E. 145.

Under these allegations of the complaint, the plaintiff's land has been subjected to a servitude other than that incident to ordinary travel, and he is entitled to compensation therefor.

The demurrer should be overruled.